## SCRABIC v CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY CO

Ohio Appeals, 1st Dist, Hamilton Co

No 4042. Decided Feb 8, 1932

Edward M. Ballard, Cincinnati, for plaintiff in error.

Harmon, Colston, Goldsmith & Hoadley, Cincinnati, for defendant in error.

HAMILTON, J.

There are two specifications of error:

First: The judgment is against the weight of the evidence.

Second: That the verdict and judgment are contrary to law.

We will consider the question that the verdict and judgment are contrary to law.

Plaintiff in error bases his argument on what is known as the Federal Boiler Inspection Act.

The basis of the railway company's defense was that the derailment was caused by the breaking of the pedestal or frame on the front truck of the tender of the locomotive; that the break occurred prior to the derailment, and that the breaking was due to a defect in the iron, which was not discoverable by inspection. The defendant introduced evidence as to the careful inspection. The Boiler Inspection Act is found in Vol. 44, Part 1, United States Statutes At Large, Title 45, Ch. 1, §23, the pertinent part of which is:

"It shall be unlawful for any carrier to use * * * on its line any locomotive, unless said locomotive, its * * * tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, * * *."

Plaintiff in error argues that this makes the railway company the insurer of the safety of its passengers, and that the breaking of any of the parts and appurtenances of the locomotive and tender constitute no defense, since the law creates a duty "absolute" on the part of the railway company, and lack of knowledge is no defense.

This Act (Federal Boiler Inspection Act) has been construed and applied by the United States Courts, which construction is binding authority in interstate cases. The rule of liability on the part of the railroad companies is declared in the case of Baltimore Rd. Co. v Groeger, Administratrix, 266 U. S. Rep., 521. The second and third paragraphs of the syllabus are:

"2. Under this section the carrier's duty to have the boiler in safe condition is absolute and continuing."

"3. Where a breach of this duty is a contributing cause of an explosion resulting in the death of an employee, the carrier is liable under this Act, and the Employer's Liability Act, whether or not it had notice, actual or constructive, that the boiler was defective or unsafe."

Again, in the case of Lehigh Valley R. Co. v Beltz, 10 Fed. Rep., 2d Series, p. 74, the question was before the court. In the opinion the court quoted from Baltimore & Ohio Rd. Co. v Groeger, supra, as follows: "No notice to the defendant, actual or constructive, of the defects or unsafe condition of the boiler, was necessary to plaintiff's case."

And, in the Lehigh Valley case the court proceeds in the opinion:

"An "absolute" duty is one which is not subject to any limitation or condition. It is positive and not dependent. It is unqualified by any conditions or considerations whatsoever. If the Boiler Inspection Act imposed on the defendant an absolute duty to have the boiler and appurtenances thereof safe to operate, and substituted that rule for the common-law rule, which holds the employer to ordinary care to provide his employees a reasonably safe place in which, and reasonably safe appliances and machinery with which to work, it in effect makes the employer an insurer of the safety of the place in which the employee works and of the appliances with which he works. While the duty imposed upon the carrier is absolute, it is not enough that the carrier had failed to show that the appliances which it had provided were safe."

The Act in question furnishes protection to passengers as well as employees.

Had Scrabic based his action on the ground that the boiler, tender and appurtenances were not in proper condition, he would have had to show that the failure to obey the Act in those respects was the proximate cause of the injury. He did not do this. He grounded his action on the res ipsa loquitor rule. He offered evidence proving that he was a passenger on the train; that the derailment took place, resulting in his injuries complained of and offered proof of the extent of those injuries by medical testimony, and rested his case. This made a case under the res ipsa loquitor rule, whereby the jury might infer that the accident was due to the negligence of the defendant company and called for some explanation on the part of the defendant company to rebut the inference of negligence drawn from the fact of derailment.

The defendant thereupon offered a great deal of evidence bearing on the construction of the railroad, the curve and the curvature, the speed permissible, inspection of the locomotive and all of its parts, which was admitted without objection by counsel for plaintiff. Defendant then proceeded to introduce expert testimony to the effect that they found the front truck of the locomotive tender with its pedestal or iron framework broken; offered testimony that the break could have occurred by reason of latent defects in the iron; that they made careful inspection and no defects were discoverable; that this break, in the opinion of the witnesses, may or could have occurred immediately preceding the derailment, thereby causing the derailment. Much of this kind of evidence was submitted by defendant without objection by plaintiff, and extended cross-examination followed.

The court charged the jury and omitted from the charge, at the request of the plaintiff, plaintiff in error here, any reference to the Boiler Inspection Act. The plaintiff reserved no exception to the charge.

This court cannot as a matter of law apply the rule, finding the verdict and judgment against the law, based on the Boiler Inspection Act, when the Act was in no form brought into the case, and all evidence, objectionable under the Inspection Act, was admitted without objection. Error cannot be predicated on the admission of evidence, not objected to, or to the charge of the court, omitting any charge on the Boiler Inspection Act, where no ex-

ceptions were taken by the plaintiff in error to the charge.

The jury had a right to take the evidence submitted without objection and had a right to consider this evidence under the charge of the court.

While we have expressed some tentative views on the Boiler Inspection Act in connection with the case, our conclusion is that the plaintiff is not entitled to a reversal on this ground, for the reason, as above stated, that the Act was not brought into the case in a way to present a question of error.

The question of the weight of the evidence under the state of the record has given us considerable difficulty. Under the facts above stated the plaintiff clearly made out a case which calls for the application of the res ipsa loquitor rule, and this rule the court gave to the jury. The inference raised calls for an explanation on the part of the defendant railroad company. If any evidentiary explanation is given to rebut the inference, that evidence must be found in the testimony to the effect that the breaking of the pedestal or frame on the truck of the tender caused the derailment.

It was testified to by railroad employees that finding the pedestal broken and some marks on the ties just preceding the place of derailment, they were of the opinion that the breaking of the pedestal occurred prior to the derailment, and that that breaking caused the derailment.

An expert was called by the plaintiff, who gave testimony in rebuttal to the effect that there was nothing to cause the break of the pedestal prior to the derailment, since the pedestal carried no great weight; that the pedestal was constructed with eleven times the required strength for service; that the sand holes in the iron were not sufficient to weaken it over two per cent; that there were several other fractures of this same pedestal; that the engine ran over 300 feet after the derailment and stopped 90 feet from the track, and gave many other scientific reasons why in his opinion the derailment and wreck was the cause of the breaking of the pedestal and not the breaking of the pedestal the cause of the derailment.

This evidence given by the plaintiff's witness in rebuttal would tend to neutralize any probative effect of the evidence given by defendant as to the cause of the wreck. When we revert to the evidence produced by the defendant on the question of the cause of the derailment, we find this situation: The derailment caused a wreck of the entire train of many cars, together with the engine and tender. The photo-graphs introduced show the piling up of the wreckage and the twisting of iron. A picture of the truck in question was introduced, which shows a complete fracture of the pedestal, but little displacement of parts. It also shows several other cracks in the pedestal. It was found many feet from the track, and more or less intermingled with the wreckage.

There is some evidence of marks on the ends of some ties, which it is stated might have been caused by the tilting of the tender by reason of the break. In other words, the witnesses infer that the marks on the ends of ties, just preceding the place of derailment could have been caused by tilting of the tender. That the tilting of the tender could have been caused by a breaking of the pedestal; that the breaking of the pedestal could have been caused by defect in the iron by reason of sand holes; that the derailment could have been caused by the breaking of this pedestal. The reason they are of that opinion is the fact that they found the truck with the broken pedestal and some marks on the ties.

We are of opinion that this evidence is of very little probative value, and must be classified as conjecture and speculation. Probabilities are not raised by the evidence. Mere possibilities will not sustain a legitimate inference of the existence of a fact. 23 Corpus Juris, 51, §1795, and cases cited; **Bag Co. v Jaite, etc., 112 Oh St, 506, at 510 and 511.**

The evidence is wholly insufficient to overthrow the inference under the res ipsa loquitor rule. The inference is strengthened by evidence that the derailment took place on a curve; that the train struck the curve at a high rate of speed; that on account of traffic, it is impossible to keep the tracks at a uniform grade of curvature; that the track requires frequent correction.

These facts present a stronger probable solution of the cause of the wreck than the speculation concerning the breakage and effect thereof of the pedestal on the tender truck.

It is suggested that this court should reverse the judgment and remand the case with instructions to the trial court to submit the case to the jury on the question of the extent of the damages. This the court is without power to do, for the reason that the case is grounded on the res ipsa loquitor rule. That we do not have the power suggested is decided in **Glowacki, etc. v Northwestern Ohio Ry. & Power Co., 115 Oh St, 451, at 461,** wherein the court said, quoting from Sweeney v Erving, 228 U. S., 233:

"In our opinion, **res ipsa loquitor** means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict."

The holding in effect is, that it is for the jury to draw the inference and not the court.

Our conclusion is, that the verdict and judgment are against the weight of the evidence. For that reason, the judgment of the Court of Common Pleas is reversed, and the cause will be remanded to that court for a new trial.

ROSS, PJ, and CUSHING, J, concur.