## WHARTON v LONG

Ohio Appeals, 9th Dist, Summit Co

No 2388. Decided Oct 31, 1934

148

R. H. Nesbitt, Akron, for plaintiff in error.
Lahrmer & Hadley, Akron, and Stanley
S. Nicholls, Akron, for defendant in error.

## OPINION

By FUNK, J.

The record discloses that plaintiff and his wife (the mother of said son) took their son to the office of defendant in Akron about 9 o'clock a. m. of Sept. 5, 1931, for the purpose of having the son's tonsils and adenoids removed; that defendant performed said operation within an hour after said parents and son arrived at defendant's office; that a general anaesthetic was given the child; that after the operation the child was placed in an emergency bed in the doctor's office, where it remained for several hours; that the parents remained there with their child, and then took it to their home, which was also in Akron; that the operation was not out of the ordinary for removing tonsils and adenoids, and was suc-

cessful so far as the operation itself was concerned; that both parents testified that the child vomited some that afternoon, kept spitting up some blood, and developed some fever; that the plaintiff and the defendant each had a telephone in their respective residences, and that the doctor also had one in his office; that about 5:30 o'clock that afternoon, plaintiff telephoned defendant, and, according to plaintiff's testimony, said to defendant: "I asked him if he—told him the condition of the child as best I could explain it, and asked him if he hadn't better come down. And he informed me that that was natural with that kind of an operation, and he would suggest paregoric, to give him the ordinary doses to quiet his nerves, and perhaps give him some rest."

Defendant also testified that he had a telephone talk with plaintiff concerning the child about 5:30 o'clock on the afternoon of the day of the operation. Concerning what was said in that conversation, defendant testified that "I was informed that the child had vomited a couple of times, and was getting restless, and I was asked whether or not I would recommend paregoric in case the child continued to be restless," and that he approved the giving of paregoric.

Defendant further testified that he was not asked to go to see the child that evening, that there was nothing said about his coming to see the child, and that he was not informed as to the bleeding of the child, as claimed by plaintiff.

There is thus some conflict in the evidence as to just what information was given defendant by plaintiff over the phone on the evening of the day of the operation.

The evidence further discloses that plaintiff gave the child paregoric as suggested by himself or the doctor, but that it did not quiet the child, and that the child continued to be restless, to vomit, and to have fever during the night; that plaintiff did not again call the defendant by telephone until the next morning about 8 to 8:30 o'clock, when defendant was preparing to go to see his father; that defendant immediately sent Dr. Rechsteiner to see said child, which doctor was the one who had administered the anaesthetic to said child at the time of said operation; that Dr. Rechsteiner arrived at plaintiff's home in about a half hour, examined the child, took some blood from its ear for examination, and advised taking the child to the hospital at once.

Plaintiff did not accept Dr. Rechsteiner's advice, but at once sent for another doctor, who arrived at plaintiff's home within several hours after Dr. Rechsteiner left, and gave the same advice Dr. Rechsteiner had given. The child was thereupon taken to the hospital, where a hypodermic was given it, and, after certain blood tests, was given a small blood transfusion the next day. Soon thereafter an abscess developed on the child's back, also one on its arm, where the instrument was inserted for the blood transfusion, and also others in its ears, and the child became quite sick and carried a fever for some weeks thereafter.

It will be noted that no claim is made for any negligence in performing the operation or for anything that was done after Dr. Rechsteiner arrived at plaintiff's home the next morning after the operation. The only claimed negligence is that the defendant failed or refused to come to see said child on the evening after the operation, after the plaintiff had telephoned him about the child, as hereinbefore set forth.

It will be further observed that, while the plaintiff testified that the boy vomited, that his saliva had blood in it, and that he had fever on the afternoon of the day of the operation, it is only by inference that he testified that he so informed defendant, as he does not state in his testimony just what he really did tell the doctor, he testifying only that he "told him the condition of the child as best I could explain it, and asked him if he hadn't better come down."

First, the plaintiff in error claims that it was necessary for the plaintiff below to produce expert testimony to the effect that defendant was negligent in failing to call upon the child in response to said telephone conversation; in other words, that it was incumbent upon the plaintiff to show that what the defendant did was not the ordinary, usual and approved method of practice that would have been used by any reputable physician under the information defendant had at the time in question; and defendant also claims that it was necessary for the plaintiff to produce expert testimony to the effect that the subsequent condition of the child was proximately caused by the failure of the doctor to call upon the child as aforesaid; in other words, that plaintiff was required to show, by expert testimony, that the necessity of said blood transfusion and said development of abscesses was the proximate result of the failure of defendant to visit the child after said telephone conversation on the day of the operation and administer such treatment as its condition required; and accordingly, the defendant claims that, in the absence of said expert testimony, it was error to render judgment for the plaintiff.

The rule is recognized in Ohio, and we believe properly so, that expert testimony is not always required to enable a jury to determine whether a physician has been guilty of negligence or malpractice, and this is particularly so where the conduct of or treatment administered by the physician is of such a character as to warrant the inference of want of care or negligence in the light of the knowledge and experience of the jurors themselves as ordinary laymen.

The doctor and the father of the boy were the only witnesses who testified as to what was said by the father to the doctor at said telephone conversation, and if the jurors believed the father as to what he testified he told defendant, and were justified in inferring that the child had a fever and was bleeding to the extent testified to at the trial by the parents, and that the father so informed the defendant, we do not believe it would require much, if any, expert or opinion testimony to support a finding that defendant was negligent in not going to see the child and administering to its needs on the evening in question.

As to whether expert testimony was necessary to show that the necessity of a blood transfusion, or that the development of abscesses, was the direct result of the failure of defendant to visit the child and administer to its needs on the evening in question, that is an entirely different proposition. Although it may be possible, or even probable, that said condition of the child subsequent to the operation may have resulted from the failure of defendant to visit the child on the evening in question and administer such treatment as the condition of the child required, there is no direct evidence to show that it did.so result, or any evidence that it might not have resulted from some other cause, or might not have resulted even if defendant had called upon the child that evening.

Under the evidence in this case, the jury were thus left to conjecture or infer that the subsequent condition of the child might possibly, or probably did, result from such failure by defendant to administer treatment to said child on the evening of the day of the operation, although such condition might have resulted from other causes and not from such failure to administer treatment to said child. In other words, in the absence of expert evidence on the subject, it would seem to be just as probable that the child would have needed a blood transfusion or would have developed abscesses even if the defendant had gone to see the child and done everything medical science would have required to be done on the evening of the day of the operation.

The evidence adduced (there being no expert evidence on this question) not being such as would justify the inference that the doctor's failure to visit the child was the proximate cause of the subsequent condition of the child, we are required to hold that the verdict is manifestly against the weight of the evidence on that question.

Second, defendant further contends that the court erred in giving plaintiff's request before argument.

As pointed out by counsel, this request is copied verbatim from the second paragraph of the syllabus of the case of **Gillette v Tucker, 67 Oh St 106.**

Counsel for defendant concedes that it is correct as an abstract proposition of law, but claims that the part of it which refers to the operation itself has no application to the issues in the instant case.

Considering this request in connection with the record as a whole, we are clearly of the opinion that the language used referring to the operation, and the connection in which it is used, was not prejudicial to the rights of defendant.

Third, counsel for defendant contends that the court erred in refusing to give defendant's special requests to charge before argument Nos. 3. and 5.

As to said request No. 3, counsel for plaintiff, in their supplemental brief, make substantially the same argument as to why this request was properly refused as counsel for defendant makes as to why plaintiff's request given before argument was prejudicial—to-wit, because part of it refers to the necessity of care in the operation, concerning which there was no complaint—and that it was therefore not in issue. We accordingly, for the reasons stated concerning plaintiff's special request to charge, find no error in that respect.

However, while the meaning or intent of this request may be technically correct, on account of its peculiar wording, we think it would probably tend to confuse the jury rather than give them its correct meaning. We are therefore of the opinion that request No. 3 was properly refused.

Concerning defendant's request No. 5, which reads as follows:

"The court instructs you that where there are two or more possible causes of a condition, for one or more of which defendant is not liable, and the evidence in the case leaves it just as probable that the injury or condition is the result of one cause as the other, the plaintiff must show by a

greater probability of truth that the cause for which defendant is liable produced the result, and if the evidence leaves it for your conjecture, the plaintiff can have no recovery in this action and your verdict must be for the defendant."

Counsel for plaintiff concede that what counsel for defendant intended to say in said request No. 5 is a correct proposition of law, but claim that it was not error for the court to refuse to give said request, for two reasons:

First, because the principle counsel for defendant claims for it is covered by request No. 4, which was given.

While it may be true that in a very general way request No. 5 is covered by request No. 4, which was given, request No. 5 in addition instructs the jury concerning the law where there are two or more possible causes of a condition, for one or more of which defendant is not liable; that proposition not even being suggested in request No. 4.

Second, because the wording of said request No. 5 "does not accurately express" the idea intended, and that, as a result, the language in said request is "confusing, contradictory and irreconcilable." Said counsel claim that what the request really says is that, when the evidence is all in and such evidence leaves the probability equally balanced as to which of two or more causes, for one or more of which defendant is not liable, caused a condition, then the plaintiff must show by a greater probability of truth that the cause for which the defendant is liable caused the condition. Said counsel thus contend that—

"Of course, if the evidence balances after the evidence is all in, it is impossible for the plaintiff to show a preponderance, and there is nothing more that he can do about it; and of course the fact that the evidence did balance would not be the thing that obliged him to prove his cause by a preponderance of the evidence, as that duty was on him from the first."

We think that this request No. 5 is sufficiently inaccurate to have justified the court in refusing to give it before argument.

However, as the defendant was entitled, under the evidence in this case, to have the jury correctly instructed on the proposition inaccurately stated in said request, and as the offering of said request before argument was sufficient to call the court's attention thereto, it was the duty of the court to cover said proposition in its general charge, which it failed to do. This, we

think, was error prejudicial to the rights of the defendant, and especially so in view of the very meager evidence as to the condition of the child, after the operation, having been proximately caused by the defendant's failure to visit the child, as we have hereinbefore pointed out.

Moreover, at the close of the general charge, when the trial court asked counsel if they had any requests for further instructions to be given to the jury, counsel for defendant at that time again submitted said request No. 5 to the trial judge and requested that he then charge on the proposition therein stated, which he refused to do, and to which failure and refusal to charge the defendant duly excepted.

The court having theretofore failed to cover said proposition in the general charge, this was also error, which at least served to emphasize the error in failing to include said proposition in the general charge, and doubly placed it beyond question as an error of commission and not one of omission.

Fourth, counsel for defendant further claims that the court erred in the admission of evidence, concerning the length of time the defendant was in his office on the morning of the day of the operation after the operation had been performed.

While the length of time defendant was in his office after the operation and before plaintiff took the child home was not a material matter in this case, and we think that such evidence was incompetent, we believe that, when it is considered in connection with the record as a whole, including the charge, it was not such as to be prejudicial to defendant.

Fifth, it is also claimed that there was error in the general charge of the court in two particulars, one of which is quite technical; and in view of the claims made in the petition and the evidence as shown by the record, we do not find that the court committed prejudicial error in the parts of the charge of which complaint is made.

For error in the trial court's failure and refusal to instruct the jury as herein pointed out, and because the verdict upon the subject of proximate cause is manifestly against the weight of the evidence, the judgment is reversed.

The request of the defendant for final judgment in his favor is denied, and the cause remanded to the Court of Common Pleas for further proceedings according to law.

WASHBURN, PJ, and STEVENS, J, concur in judgment.