**URDANG (RAFAL, Admx., etc., substituted), Plaintiff-Appellee, v. MAHRER, KRAUSE, LUBERT, BERMAN & BENNETT, a Partnership, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24530. Decided April 24, 1959.

A. H. Dudnik, Fred Weisman, for plaintiff-appellee.
McConnell, Blackmore, Cory & Burke, for defendants-appellants.

(DOYLE, PJ, HUNSICKER, J, of the Ninth District, RADCLIFF, J, of the Fourth District, sitting by designation in the Eighth District.)

## OPINION

Appeal by defendant from a judgment of the Court of Common Pleas of Cuyahoga County, overruling defendant's motion for judgment notwithstanding a jury verdict for the plaintiff in the amount of $15.000, and from a judgment for the plaintiff and against the defendant entered on the verdict of a jury.

DOYLE, PJ, delivered the opinion of the court.

Mrs. Urdang, 76 years of age and suffering from stomach discomforture, traveled alone by bus from her home to the Cleveland Fairmount Boulevard offices of the defendant doctors, who specialized there in the taking of x-ray pictures, for the purpose of locating and determining ailments of the human body. She went upon the advice of her physician. She was accepted as a patient by the defendants for the specialized services which they rendered.

Shortly after her arrival, she was prepared by the attendants for, and was given, a barium enema, whereupon a full film of x-ray pictures was made, in compliance with standard procedure. Upon the completion of this filming, she was given a clean gown because of the leaking of barium from her body (she had been given the barium rectally to a point where she could hold no more), and was escorted to the lavatory for the purpose of relieving her intestines of the foreign substance.

The floor level of the lavatory was 7-½ inches higher than the floor level of the floor approach to its door; the door knob on the outside was at a regular height, but the knob on the inside was 7-½ inches closer to the floor because of the step. The lighting of the entrance was adequate, and no unusual condition of the area existed.

The patient testified on deposition (she was dead at the time of trial—cancer) that after she entered the lavatory she sat on the toilet for a long time; "it must have been over an hour * * *." She said that she got "sick and dizzy," and called for help three or four times.

"Q. And finally you had reached a point where you were ready to come out; is that right?

"A. Yes.

"Q. And what did you do?

"A. And they never came.

"Q. Did you call them?

"A. I called them and nobody answered. And I was starting to walk myself.

"Q. And how many times did you call? Did you just call once?

"A. I called about three or four times."

The patient then testified that she opened the door by herself and fell over the step. There were no other witnesss. As a consequence of the fall, her hip was broken, with a resulting confinement of over four months in a hospital.

She testified:

"Q. You opened the door by yourself?

"A. I opened the door by myself.

"Q. And then did you miss the step and fall?

"A. I missed the step and I fell. As soon as I opened the door, I fell. * * *

"Q. Had you forgotten the step was there?

"A. I suppose I must have forgotten. I didn't realize it.

"Q. You had stepped up that step coming in, of course, but you forgot it when you came out?

"A. I forgot it, I didn't see it. I fell right away."

In partial contradiction of the plaintiff's testimony is persuasive evidence to the effect that: Mrs. Urdang's appointment with the doctor was for 10:45 a. m.; she arrived about 10:45 a. m. and entered the x-ray room between 11:00 and 11:05 a. m.; the administration and observation of barium, and the procedure of x-ray, took from 11 to 16 minutes; the final x-ray picture, before she was escorted to the lavatory, was completed between 11:15 and 11:25 a. m.; and that the maximum time that she could have been in the lavatory was from 15 to 20 minutes.

There is uncontradicted evidence to the effect that, since the installation of the lavatory in its then condition, no one had ever fallen or tripped on entering or leaving it; and that from seven to eight thousand barium enema patients had used the same toilet room without incident, in addition to an equivalent number of other patients, employees and other persons.

The instant suit, brought by the administratrix of the estate of Mrs. Urdang, for damages for the broken hip injuries suffered by the deceased during her lifetime, charged negligence as follows:

"1. In that when they assisted plaintiff to the washroom they failed and neglected to warn her of the existence and location of the step, or riser, at the entrance way of said washroom.

"2. In that defendants knew that, by reason of her advanced age and the barium x-rays performed upon her person, plaintiff's physical condition necessitated that she be assisted while within the washroom and in her exit therefrom in order for her to exit from said washroom with reasonable safety, but, nevertheless, defendants failed and neglected to provide plaintiff with assistance to exit from said washroom.

"3. In that defendants failed and neglected to make the entrance way of said washroom reasonably safe for the exit therefrom by their business invitees and more particularly this plaintiff."

At the close of the evidence in the trial, various motions were made by counsel for the defendants. The court sustained the motions directed to striking from the petition the first and second allegations of negligence set forth above.

The case was eventually given the jury on the third allegation alone; and, on that charge of negligence, the jury returned its verdict for the plaintiff.

Pertinent comments of the trial judge at the time of the rulings on the first and second allegations of negligence were:

In respect to allegation No. 1:

"* * * I think the law in Ohio is to the effect that, a person being once aware of an existing danger of some sort, there is no obligation upon the property owner involved in this particular instance or person in control, to advise them (sic) of the existing danger. I think that she observed it, and it is clear from the testimony of the decedent herself that she was aware of the step; and certainly her answer in response to the fact that she had forgotten about it indicates clearly * * * that she was aware that a step was there; and, clearly, under the law there is no reason why that particular ground * * * should be submitted to this jury."

In respect to allegation No. 2:

"* * * the ground of malpractice certainly leaves the burden upon the plaintiff to establish such malpractice; and I think in this instance the question of whether or not the burden has been sustained—I don't think that any evidence has been offered to indicate any malpractice, and for that reason the second ground of negligence will be stricken as it appears on * * * plaintiff's petition, and it will be withdrawn from the consideration of this jury."

The defendants, the appellants here, assign errors as follows:

"1. The court erred in failing to grant defendants' motion for a directed verdict at the conclusion of all the evidence for the reason that defendants were entitled to a verdict in their favor as a matter of law.

"2. The court erred in failing to grant defendants' motion for judgment notwithstanding the verdict for the reason that, upon the evidence, defendants were entitled to a judgment in their favor as a matter of law."

The plaintiff, the appellee, to the contrary, speaks of the sole issues as:

"Whether in considering all of the evidence (and pleadings) * * * in its most favorable light, in favor of the plaintiff, reasonable minds could only reach the conclusion that the jury was wrong and that the defendant is entitled to judgment in its favor as a matter of law"; and that the issues, separately stated are:

"1. Could reasonable minds differ as to whether or not the defendants exercised reasonable care under the circumstances? 2. Could reasonable minds differ as to whether or not the plaintiff exercised reasonable care for her own safety under the circumstances? If the answer is 'yes' to both questions * * *, the verdict and judgment * * * (should) be affirmed."

Attention will be first directed to the second allegation of negligence which the trial court characterized as a charge of malpractice. It is again observed that this allegation was stricken from the case and not submitted to the jury.

The great weight of authority supports the view that, ordinarily, expert evidence is essential to support an action for malpractice against a physician, a surgeon, a roentgenologist, or other expert practicing in a similar field, on the theory that what is or is not proper practice in the examination and treatment of a patient, or what is or is not the standard of practice, or the usual practice and treatment in the community, is a question for experts, and must generally be established by their testimony. See: Annotation of cases in 141 A. L. R. 5, "Necessity of expert evidence to support an action for malpractice against a physician or surgeon."

There are, however, many situations and conditions which do not require expert opinion evidence to establish a case of negligence. Zimmerman, J., in **Hubach, a minor, v. Cole, 133 Oh St 137**, at p. 142, has well said that:

"In a malpractice action, the issue as to whether the defendant physician has proceeded in the treatment of the particular case with

the requisite standard of care and skill is a matter which must ordinarily be determined from the testimony of medical experts. But the statements and acts of the defendant physician, as well as external appearances and manifest conditions which are observable by anyone, may be given by non-expert witnesses. And such testimony by lay witnesses may show a course of conduct with ensuing results of such a character as to warrant the inference of want of care. **31 O. Jur., 489, Section 247;** Benson v. Dean, 232 N. Y. 52, 56, 133 N. E. 125, 126; DeGroot v. Winter, 265 Mich., 274, 251 N. W., 226; Stockham v. Hall, 145 Kan. 291, 65 P. 2d 348, 349."

And, see the case of **Wiley v. Wharton et al, 68 Oh Ap 345,** 41 N. E. 2d 255.

As we view the evidence in this case, the nurses who had Mrs. Urdang in charge, after the x-ray films were made, were in the employ of the defendant doctors. The issues here do not concern their acts, or the acts of the doctors in a professional capacity in administering the barium enema, or in the making of the films, but they do relate to administrative acts and omissions in carrying out the obligations of the doctors and their employees in bestowing adequate attention to the needs of an elderly patient in seeking necessary intestinal relief while in an abnormal physical condition—a necessary consequence of professional services previously rendered. Neither professional skill, nor professional care, in this respect, was involved; and, while doctors and nurses are not insurers of a patient's safety, they are obligated to use reasonable care and diligence in safeguarding patients who are in their care and charge. Such care and diligence is measured by the capacity of the patient to care for himself.

As in the case before us, when a patient, by reason of age and other physical infirmity caused by the rendering of professional services, suffers an injury entirely unrelated to the rendered professional services, while under the immediate care of a doctor or his nurses, a question of fact is presented as to whether reasonable care was given under the circumstances existing; and it might well be that a jury could reasonably find that the duty of the doctors and the nurses, in the exercise of ordinary care for the patient, required a greater amount of care than would be required in the case of a vigorous person under no unusual disability.

It may be argued that the proof to establish such a case must be furnished by expert testimony. There is no expert testimony on this question in the case before us. It is our thought, however, that while, ordinarily, jurors would find difficulty, without the help of expert medical evidence, in determining the right of a patient to recover against his physician for injury brought about by the actual treatment of the patient by the doctor or his nurses, injuries received during the course of treatment, and unrelated to the treatment itself, may be of such a character as to warrant the inference of want of care from the testimony of laymen, in the light of the knowledge and experience of the jurors themselves.

Certainly lay testimony would be sufficient to establish a lack of ordinary care of a doctor or his nurse who permitted a dazed, semi-

normal or semiconscious patient from wandering around the offices unattended, and who then injures himself by falling out of an open window, or on a hot radiator, immediately following skillful professional treatment by the doctor. Indeed, the duty of care does not stop when the operation is terminated. Public consideration requires additional care which is inseparable from the nature and exercise of the profession of healing. The negligence would not be attributed to the presence of the window or the radiator, but might be such as would justify the jury in finding a lack of care of a defendant in protecting the safety of the patient, in the light of his physical or mental capacity to care for himself under the circumstances existing.

The trial court should have submitted the second allegation of negligence to the jury.

Two of the members of this Court of Appeals (Judge Hunsicker and the author of this opinion) were on the court which reviewed the case of **Leighton v. Hower Corp.**, in the Ninth Judicial District. The Supreme Court, in affirming the judgment of the court, in 149 **Oh St** 72, spoke as follows:

"1. Where plaintiff's testimony discloses that she was 'temporarily oblivious' of the presence of a step which a few minutes before she had used, it shows a want of due care on her part and does not dispel the inference of her own negligence."

While the facts of the Leighton case were similar to the facts in the instant case, in respect to the necessity of a step up upon entering a toilet room, or a step down upon leaving it, in the Leighton case we based our final judgment primarily on the negligence of the injured plaintiff and did not explore the question of negligent building construction.

It is observed in this connection, however, that the injured lady in the Leighton case was a business visitor in a department store which was open to the public, and that she suffered from no physical impairment, or at least none which was known to the proprietors of the store.

In the instant case, the injured lady was in the care of the defendants as a patient, whose physical condition was, or should have been, known to them. Under these circumstances, unlike the ruling on the plaintiff's negligencce in the Leighton case, the question of whether Mrs. Urdang was negligent, which proximately caused or contributed to cause her injuries, is indeed one for a jury to determine.

We proceed now to the claimed negligence of construction in the single specification of negligence submitted to the jury, to wit:

"In that defendants failed and neglected to make the entrance way of said washroom reasonably safe for the exit therefrom by their business invitees and more particularly this plaintiff."

There was nothing unusual about the entrance to the lavatory, excepting only the step as has been heretofore noted.

While we find no Ohio authorities treating specifically this factual situation, we are impressed with the principles of law stated in several out-of-state cases.

In Wessner v. Blue Ridge Transportation Co. et al., 338 Pa. 161, a toilet compartment floor six inches higher than a restroom floor, in a

terminal of the transportation company, triggered the fall of a business visitor who fell as she emerged from the toilet room. The court, in holding for the defendants, said:

"1. A possessor of land who provides facilities for the convenience of his business visitors which are constructed in a manner which is customarily regarded as sufficient for their protection by reasonably careful persons is not negligent."

In the opinion there appears the following observation:

"To contend that the jury should have been allowed to say that this construction unreasonably exposed users of these premises to danger, is to divorce the law from reality. * * * The same construction is used in many of the larger office buildings and department stores in this city, and indeed, throughout the country. Common observation is enough to satisfy us that the defendants' rest room did not deviate from the standard customarily regarded as requisite by other reasonably careful persons under like circumstances * * *.

"There is no evidence of inadequate lighting * * *. It is not contended that the step was worn, slippery, or defective in any manner. The platform was of only ordinary height. Under these circumstances, it would be thoroughly pernicious to permit the jury to speculate with the rights of the defendants."

In Pierce v. Burlington Transportation Co., 139 Neb. 423, 297 N. W. 656, the injured plaintiff was a passenger on a bus, and was directed to use a restroom in a hotel adjacent to the bus station. The floor level of the restroom was six to seven inches higher than the floor of the anteroom, thus making it necessary for the plaintiff to step up as she entered. Upon leaving the toilet room, she slipped over the edge of the restroom floor. The court held that there was no negligence shown to exist on the part of the transportation company, nor indeed of the hotel. When referring to the hotel, the court observed:

"The premises upon which the plaintiff was invited to enter and where the accident happened was a hotel which must be kept reasonably safe for all persons invited to use its facilities. * * * The mere fact that there was a step which plaintiff would have to ascend and descend in going to and from the rest room does not evidence a want of due care on the part of the hotel proprietor. Such steps are usual and customary in hotels. Main v. Lehman, 294 Mo. 579, 243 S. W. 91 There is nothing inherently dangerous in having the floor of a toilet and lavatory raised six or seven inches above the floor of the anteroom. Viles v. Thunberg, 164 Wash. 190, 2 P. 2d 666; Albachten v. Golden Rule, 135 Minn. 381, 160 N. W. 1012."

In consideration of the allegation of negligence, as set out above, and the only one submitted to the jury, we find no evidence to justify its submission, and the court erred in so doing.

Recapitulating our observations, we find error prejudicial to the rights of the appellants, the doctors, in the submission to the jury of allegation of negligence No. 3. We find error in the court's refusal to submit to the jury allegation of negligence No. 2. We find no error in not submitting to the jury specification of negligence No. 1. As to the

allegation No. 1, no mischief resulted through failing "to warn her of the existence and location of the step or riser" when she was assisted to the lavatory; she stepped up the step and entered the room without incident.

The appellants have appealed from the ruling of the trial court in its refusal to enter judgment for them notwithstanding the verdict, as well as from the judgment rendered in favor of the appellee and against the appellants. The appellants have not asked for a new trial. The appellee has not appealed, seemingly satisfied with the judgment in her favor rendered in the court below.

We find no error in the court's refusal to enter judgment for the appellants on its motion for judgment notwithstanding the verdict. We find error prejudicial to the rights of the defendants (appellants) in the judgment entered for the plaintiff (appellee) on a verdict based solely on an erroneously-submitted allegation of negligence. We find error in the court's refusal to submit to the jury allegation of negligence No. 2, upon which there was evidence of sufficient worth to justify its submission.

In our search of the record, we find that justice can only be accorded by the granting of a new trial, even though neither side has requested one.

The judgment for the appellee, and against the appellants, will be reversed, and the case remanded to the Court of Common Pleas for a new trial, and a journal entry will be prepared in form and substance not inconsistent with this opinion.

Reversed and remanded.

HUNSICKER and RADCLIFFE, JJ, concur.