**BUERGER, Appellant,**

**v.**

**OHIO DEPARTMENT OF REHABILITATION & CORRECTION, Appellee.**

[Cite as *Buerger v. Ohio Dept. of Rehab. & Corr.* (1989), 64 Ohio App.3d 394.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP-175.

Decided Dec. 26, 1989.

*Karl A. Buerger, pro se.*

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Sally Ann Walters,* for appellee.

REILLY, Judge.

This is an appeal from a judgment of the Court of Claims of Ohio dismissing plaintiff's complaint against defendant on the basis that plaintiff failed to present expert testimony at trial to show that the medical treatment rendered

to him fell below the required standard of care. Plaintiff, *pro se*, asserts two assignments of error:

"I. It is error for a trial court to direct a verdict for the defendant where, in a malpractice case, the verdict is pre-determined and determined by failure of defendant to comply with due process standard of presenting witnesses named by defendant.

"II. It is error for a trial court to direct a verdict for the defendant where, in a malpractice case, the only medical evidence presented is so apparent as to be within the comprehension of laymen and required only common knowledge and experience to understand and judge it."

Plaintiff, an inmate at the Chillicothe Correctional Institute, filed a complaint against defendant alleging a "claim for damages for deliberate indifference to medical needs." The claim arose from the alleged mistreatment of plaintiff involving four events: (1) an alleged failure to adequately treat plaintiff's hypertension; (2) an alleged failure to adequately diagnose and treat plaintiff's back problem; (3) an alleged failure to adequately diagnose and treat plaintiff's hemorrhoids; and (4) an alleged failure to adequately diagnose and treat plaintiff's swollen elbow.

The case proceeded to trial and was submitted on plaintiff's testimony and defendant's stipulated medical records. During the trial, the court allowed plaintiff to amend his claim for alleged continued mistreatment from 1980 until the time of trial. The court requested defendant to provide updated medical records in conformance with the allowed amendment to plaintiff's claim. Aside from the medical records, however, there was no other medical evidence in the case. Plaintiff called no expert witness. Prior to trial, defendant filed a pretrial statement, pursuant to court rule, stating that defendant expected to call an official and the doctor who treated plaintiff. Nevertheless, at trial defendant did not present those witnesses, but instead, simply rested its case on the stipulated medical records.

Plaintiff, by his own testimony, asserted several instances of inadequate treatment. With respect to his hypertension, plaintiff claimed that on several occasions defendant's medical staff refused to take his blood pressure. Plaintiff also claimed that defendant prescribed the blood pressure medications, Inderal and Enduron, but then withheld the drugs from him when it was found that he was stockpiling the medicine by continually obtaining refills. By plaintiff's admission, at the time defendant restricted plaintiff's ability to obtain the drugs, plaintiff had accumulated a three-month supply of these drugs. Thus, for some time, plaintiff was without medicine, which he claims could have caused him to suffer a stroke. Eventually, he filed an institutional

grievance which alleviated the problem. Plaintiff does not claim any resulting injury from the alleged error with his medication.

As to the degenerative disc in his spine, plaintiff testified that he reported back pain to defendant's doctor. Plaintiff was taken to Columbus for an x-ray, but refused to submit to the procedure. He requested a change in work and obtained a recommendation from a doctor that he should not lift objects weighing more than ten pounds. Plaintiff argued at trial that defendant was indifferent to his medical needs when nonmedical personnel assigned him to sweep the streets with a broom. Eventually, plaintiff submitted to an x-ray of his back.

With respect to his hemorrhoids, plaintiff testified that defendant's doctor offered surgical removal as treatment. Again, plaintiff refused the recommended treatment. As an alternative treatment, he was prescribed topical medications for the disorder. Plaintiff admitted that the problem has cleared up and that he no longer needs to take the medication.

Concerning his swollen elbow, plaintiff testified that he was examined by defendant's physician who found nothing wrong with the joint. Plaintiff claimed that it was negligent for the doctor to fail to further test and treat his elbow. Plaintiff testified that he has since had continual pain in his elbow and also in his hand.

Finally, plaintiff claimed that he was prescribed the "mind altering" drug, Thorazine. He contended that this drug was prescribed as a form of revenge because he had filed grievances relating to the withholding of his hypertension medications.

At the close of the trial, the court reserved judgment on the case until additional medical records were available for the amended cause of action. The court explained to plaintiff, before the trial, that plaintiff bore the burden of proof and should provide expert testimony on the standard of care. At the close of the trial, the court said that he could not rule in plaintiff's favor unless there was something in the records that laymen could comprehend as malpractice. The court's entry of dismissal indicates the court found that the records and evidence did not establish medical malpractice. Thus, the court dismissed the claim on the authority of *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, for failure of plaintiff to establish a breach of the standard of care.

In *Bruni,* the Supreme Court, at 131, 75 O.O.2d at 186–187, 346 N.E.2d at 677, stated:

" 'Proof of malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind

of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff. * * * '

"Under Ohio law, as it has developed, in order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things. * * *

"Failure to establish the recognized standards of the medical community has been fatal to the presentation of a prima facie case of malpractice by the plaintiffs. * * * " (Citations omitted.)

The court recognized the basic principle that:

"The issue as to whether the physician and surgeon has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the testimony of medical experts. 41 American Jurisprudence, Physicians & Surgeons, Section 129; 81 A.L.R.2d 590, 601. It should be noted that there is an exception to that rule in cases where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, and in such case expert testimony is not necessary. * * * " *Id.* at 130, 75 O.O.2d at 186, 346 N.E.2d at 676–677.

Because plaintiff failed to offer any expert evidence on the standard of care and because the medical records did not establish such a lack of due care either, the trial court dismissed plaintiff's case.

Plaintiff's first assignment of error alleges that the state had the obligation to call the witnesses which it had named in its pretrial statement pursuant to Court of Claims Rule 7 (Court of Claims pretrial conference and procedure). In other words, plaintiff contends that he had a right to rely on that pretrial statement as a kind of promise or assurance that defendant would call its witnesses. Thus, plaintiff contends that he could have established his case by questioning defendant's named expert, Dr. Tanedeo.

■ Plaintiff had no right to rely on defendant's pretrial statement. The proper procedure for requiring a witness to testify is through the use of a subpoena. *Fletcher v. Bolz* (1987), 35 Ohio App.3d 129, 520 N.E.2d 22. Here, plaintiff knew that the trial court wanted him to put on expert testimony.

When the state did not call the expert, plaintiff might have objected or asked for a continuance to subpoena the witness. Instead, he chose to proceed with his case in the hope that his own testimony and the medical records would establish malpractice.

■ This is not a case where the adverse party has given assurances that a witness would be called. It is a case where the party with the burden of proof has failed to secure attendance of witnesses necessary to establish his case.

Therefore, plaintiff's first assignment of error is not well taken.

In his second assignment of error, plaintiff maintains that it was error for the court to find that plaintiff needed expert medical testimony. He contends that the medical records and his testimony are of such a character that they show negligence in and of themselves. In short, he argues that the common knowledge exception to the general rule requiring expert testimony of malpractice is applicable in this case. See *Bruni, supra.* Thus, the issue here is whether plaintiff's evidence is so apparent that laymen could understand it as such based on common knowledge and experience.

Relatively few courts in Ohio have found the common knowledge exception applicable so as to obviate the need for expert witness testimony on the malpractice issue. While no general rule can be stated, those cases seem to deal with instances of gross inattention to plaintiff's needs when it was obvious that plaintiff needed attention. See *Jones v. Hawkes Hosp. of Mount Carmel* (1964), 175 Ohio St. 503, 26 O.O.2d 170, 196 N.E.2d 592 (delirious pregnant woman who had attempted to climb out of bed several times was left unattended by nurse); *Urdang v. Mahrer* (App.1959), 81 Ohio Law Abs. 23, 158 N.E.2d 902 (seventy-six-year-old woman was left unattended in lavatory and injured herself trying to get out after crying out for help several times); *Wharton v. Long* (App.1934), 18 Ohio Law Abs. 147 (doctor failed to attend to a minor boy who, when taken home after adenoid and tonsil surgery, vomited blood and had a high fever). See, also, Annotation, Necessity of Expert Evidence to Support an Action for Malpractice Against a Physician or Surgeon (1962), 81 A.L.R.2d 597.

More recent authority has appeared to recognize the limited scope of common knowledge in a world of increasing medical complexity. See, *e.g.,* *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 275, 10 OBR 386, 390, 461 N.E.2d 1331, 1335, involving the selection of operative fixation devices, post-operative surveillance and diagnosis and treatment for post-operative infections beyond the knowledge of non-professionals.

From an examination of the records and testimony in this case, we find that the trial court did not commit error in finding the common knowledge

exception inapplicable. The records show a comprehensive medical history of examination and treatment. Plaintiff was given numerous tests and was prescribed numerous medications for his various ailments. Throughout the records, plaintiff's response to the treatments was recorded and treatment was adapted to his response. There are no admissions of inadequate treatment in the records which would indicate malpractice. And, although plaintiff argues that the records establish that defendant was only "medicating" his ailments, the record affirmatively shows that more invasive procedures, such as surgery, were proposed by defendant's medical personnel, but rejected by plaintiff. In sum, the records are devoid of any evidence of negligence so apparent as to be within the common knowledge of laymen.

■ Moreover, plaintiff's testimony does not establish such evidence of negligence either. Certainly, his allegations are that defendant inadequately diagnosed and treated his various ailments. In any event, such fundamental medical judgments on diagnosis and treatment would not be within the common knowledge of jurors. While plaintiff may argue that he did not receive the best treatment, it is his burden to show that he did not receive adequate treatment. In this case, he could only do that by means of providing expert testimony so that the court could determine the degree to which his treatment varied from the standard of care.

Furthermore, nothing in the record would establish a " * * * chain of circumstances and events from which an inference may reasonably arise that the physician was negligent and that such negligence was the proximate cause of an impaired physical condition." *Hubach v. Cole* (1938), 133 Ohio St. 137, 10 O.O. 187, 12 N.E.2d 283, syllabus. The only alleged sustained impairment subsequent to the medical care has been that plaintiff's elbow and hand have suffered persistent pain. This fact alone is not enough to establish an inference of malpractice.

Consequently, the trial court was correct in finding that expert testimony was necessary in this case. Plaintiff's situation, although more acute due to his incarceration and indigency, is not unlike the difficulty which all plaintiffs have in securing competent and credible expert testimony to meet the burden of proof required by law to show medical malpractice. See, generally, Gibbons, Malpractice Actions Without Expert Medical Testimony (1971), 20 Cleve.St.L.Rev. 43; *Edwards v. United States* (C.A.5, 1975), 519 F.2d 1137 (a prisoner's action for negligent treatment under the Federal Tort Claims Act was found lacking where qualified expert did not testify as to improper treatment or standard of care).

Plaintiff's second assignment of error is not well taken.

Finally, there is a related aspect of this case which needs clarification. Both the trial court and the parties have essentially treated this claim as one for medical malpractice. We note that the broad allegations of plaintiff's *pro se* complaint seem to be directed to an argument of "indifference to serious medical needs." That language could be predicated on the holding of *Estelle v. Gamble* (1976), 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251. In that case, the Supreme Court held that a prisoner stated a Section 1983, Title 42, U.S.Code cause of action when he alleged " * * * acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. * * * " *Id.* at 106, 97 S.Ct. at 292, 50 L.Ed.2d at 261. The prisoner claimed an Eighth Amendment violation where prison personnel allegedly failed to adequately treat his back problem and made him work even though he had such a problem. Although the court recognized the cause of action, it found that Gamble's allegations of the prison's failure to adequately diagnose and treat his back problem were insufficient to state a cause of action under Section 1983. Instead, the court found that his claims simply sounded in medical malpractice.

■ Accordingly, the trial court properly considered this case as a medical malpractice action. Moreover, it remains incumbent upon plaintiff to provide expert testimony on the standard of care in this case. For without such testimony it is impossible to determine the nature of his medical needs. And, it is unreasonable in this case to determine how indifferent defendant was to those needs unless some standard is proffered to measure the actions against. Hence, we find that the trial court's decision was consistent with the principles set forth in *Estelle, supra.*

In summary, the trial court was correct in holding that plaintiff needed to provide expert testimony on the standard of care to establish his case of medical malpractice. Plaintiff's claim was not one within the common knowledge of laymen. And, the trial court was correct in treating plaintiff's claims for indifference to medical needs as a malpractice action.

Plaintiff's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCormac, P.J., and Martin, J., concur.

John D. Martin, J., of the Fairfield County Court of Common Pleas, sitting by assignment.