[Cite as *Abdulrahaman v. S. Ohio Correctional Facility*, 2009-Ohio-7032.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ABDUL ABDULRAHAMAN

     Plaintiff

     v.

SOUTHERN OHIO CORRECTIONAL FACILITY

     Defendant
     Case No. 2007-01274

Judge J. Craig Wright
Magistrate Steven A. Larson

<u>MAGISTRATE DECISION</u>

{¶ 1} Plaintiff brought this action alleging negligence and assault. The issues of liability and damages were bifurcated and the case proceeded to trial before a magistrate on the issue of liability.

{¶ 2} At all times relevant to this action, plaintiff was an inmate in the custody and control of defendant at the Southern Ohio Correctional Facility (SOCF) pursuant to R.C. 5120.16. In his complaint, plaintiff asserts that on December 26, 2006, defendant's employees witnessed him ingest approximately 20 to 25 staples; that he was subsequently sprayed with chemical mace; that the water supply to his cell was shut off to prevent him from washing off the mace; and that the health care administrator failed to provide him with proper medical care.

{¶ 3} At trial, plaintiff testified that he has suffered from mental illness since childhood and that defendant's employees were aware that he had swallowed foreign objects in the past. Plaintiff testified that on December 26, 2006, he swallowed a number of staples and razor blades because he was upset about "family issues."

Shortly thereafter, a corrections officer went to his cell and sprayed him with chemical mace. Plaintiff asked for a shower, was provided one, and was subsequently placed in a "suicide cell." According to plaintiff, his stomach was "messed up" for two days after the incident. Plaintiff further stated that defendant's medical staff failed to provide him with proper medical treatment inasmuch as he was prescribed a solely bulk diet. Plaintiff stated that a few days after the incident, he was transferred to Oakwood Correctional Facility and that the staff there prescribed him medication which was the proper treatment in his opinion. Plaintiff offered as exhibits his informal complaints about the incident.[1] Plaintiff did not present any other witnesses on his behalf.

{¶ 4} Dr. Martin R. Sevrey testified that he was the attending physician at SOCF; that he specialized in family practice; that he had practiced medicine for more than 40 years; and that he had been employed at SOCF for one and one half years. Dr. Sevrey testified that in December 2006, he was called at home after plaintiff had swallowed some staples on the evening of December 25. Dr. Sevrey, via telephone, ordered that plaintiff be placed on a bulk diet to protect his gastrointestinal tract from irritation from the staples. On December 26, 2006, Dr. Sevrey examined plaintiff and ordered an x-ray which revealed metallic-like objects consistent with staples. Dr. Sevrey explained that plaintiff remained in the infirmary under observation for several days. According to Dr. Sevrey, plaintiff showed no signs of peritonitis or bleeding from the mouth or rectum, and he was discharged from the infirmary. Dr. Sevrey explained that a week after that incident, plaintiff swallowed a razor blade. Another x-ray was taken, a bulk diet was again prescribed, and plaintiff eventually "passed" the razor blade.

---

[1] On February 1, 2008, plaintiff filed a "motion to compel production of evidence for trial," wherein he requested copies of his x-rays. At trial, defendant stipulated to the fact that plaintiff swallowed a number of staples and a razor blade. Therefore, the court DENIED the motion.

{¶ 5} Dr. Sevrey described a bulk diet as mashed potatoes and sauerkraut. He explained that a bulk diet protects the gastrointestinal tract from being perforated or irritated by foreign objects that have been swallowed. Dr. Sevrey also opined that the standard of care for treating the ingestion of foreign objects is to prescribe a bulk diet.

{¶ 6} The medical records show that on December 26, 2006, Dr. Sevrey ordered an abdominal x-ray and started plaintiff on a diet of mashed potatoes and clear liquids for seven days. In addition, on December 27, 2006, Dr. Sevrey admitted plaintiff to the infirmary, ordered that an abdominal exam be performed every six hours for two days to check for signs of peritonitis, and ordered that the water flow to the sink and toilet in plaintiff's cell to be shut off. Dr. Sevrey explained that he ordered the water flow to be shut off as a precaution in the event that plaintiff might pass the objects, wash them off and swallow them again. On December 28, 2006, Dr. Sevrey ordered a follow-up x-ray of both the chest and abdomen and plaintiff was discharged to his cell.

{¶ 7} On December 30, 2006, plaintiff again swallowed a razor blade, and so Dr. Sevrey ordered another series of x-rays, prescribed a bulk diet, and ordered the water flow to plaintiff's cell to be shut off again. Dr. Sevrey testified that the multiple x-rays showed that everything that plaintiff had swallowed was eventually passed through his body, and that he did not suffer any "abdominal catastrophe."

I. NEGLIGENCE

{¶ 8} Plaintiff asserts that defendant's employees were negligent in failing to provide him the proper treatment, including medication, for his stomach and intestinal pain as a result of his ingestion of foreign objects. Defendant contends that plaintiff's claim is one for medical malpractice and that he cannot prevail without expert testimony.

{¶ 9} In order to prevail on a claim of medical malpractice or professional negligence, plaintiff must first prove: 1) the standard of care recognized by the medical community; 2) the failure of defendant to meet the requisite standard of care; and, 3) a direct causal-connection between the medically negligent act and the injury sustained.

*Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127.  The appropriate standard of care must be proven by expert testimony.  Id. at 130.  That expert testimony must explain what a medical professional of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances.  Id.  The exception to that rule is "in cases where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it * * *."  Id.  However, the exception is limited in scope and "[r]elatively few courts in Ohio have found the common knowledge exception applicable so as to obviate the need for expert witness testimony on the malpractice issue."  *Buerger v. Ohio Dept. of Rehab. & Corr.* (1989), 64 Ohio App.3d 394, 399.

{¶ 10} Plaintiff's allegations of negligence concern whether defendant's medical professionals selected an appropriate course of treatment for his condition.  The court finds that these allegations pertain to matters that are not within the common knowledge and experience of laymen.  Rather, plaintiff's allegations concern the professional skill and judgment used by the physician who treated him.  Therefore, expert testimony is required both to establish the requisite standard of care and to show that defendant's employees deviated from that standard of care.

{¶ 11} Plaintiff did not introduce expert testimony.  Based upon the totality of the evidence, as well as plaintiff's failure to introduce expert testimony, the court finds that plaintiff has failed to prove his claim of negligence by a preponderance of the evidence.

II.  ASSAULT

{¶ 12} Plaintiff alleges in his complaint that he was assaulted when a corrections officer sprayed him with chemical mace on December 26, 2006.  The court notes that, at trial, plaintiff did not definitively identify the corrections officer who sprayed him with the mace.

{¶ 13} Lieutenant Wesley D. Stone testified that he has used chemical mace in his capacity as both a corrections officer and a lieutenant at SOCF.  Lieutenant Stone testified that decontamination after exposure to chemical mace may be achieved with water to the affected area.  Lieutenant Stone added that he has been exposed to chemical mace himself many times.

{¶ 14} The Ohio Administrative Code sets forth the circumstances under which force may be lawfully utilized by prison officials and employees in controlling inmates. Ohio Adm.Code 5120-9-01(C) provides, in relevant part:

{¶ 15} "(2)                    Less-than-deadly force.  There are six general circumstances in which a staff member may use force against an inmate or third person. A staff member may use less-than-deadly force against an inmate in the following circumstances:

{¶ 16} "(a)                    Self-defense from physical attack or threat of physical harm;

{¶ 17} "(b)                    Defense of another from physical attack or threat of physical attack;

{¶ 18} "(c)                    When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders;

{¶ 19} "(d)                    When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance;

{¶ 20} "(e)                    Prevention of an escape or apprehension of an escapee; or

{¶ 21} "(f)                    Controlling or subduing an inmate in order to stop or prevent self-inflicted harm."

{¶ 22} The court has recognized that "corrections officers have a privilege to use force upon inmates under certain conditions.  * * * Obviously 'the use of force is a reality of prison life' and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Mason v. Ohio Dept. of*

*Rehab. & Corr.* (1990), 62 Ohio Misc.2d 96, 101-102. (Internal citations omitted.) The court finds that plaintiff did not testify with any specificity as to the facts regarding being sprayed with chemical mace on December 26, 2006. However, based upon the totality of the evidence presented, the court finds that defendant's employees acted appropriately when they used chemical mace to subdue plaintiff in order to prevent additional self-inflicted harm. The court notes that both parties agree that plaintiff was provided with a shower to decontaminate him after the chemical mace was used. Therefore, the court concludes that plaintiff has failed to prove his claim of assault by a preponderance of the evidence.

{¶ 23} Accordingly, it is recommended that judgment be rendered in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
STEVEN A. LARSON
Magistrate

cc:

Amy S. Brown
Emily M. Simmons
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Magistrate Steven A. Larson

Abdul Abdulrahaman, #487-773
Southern Ohio Correctional Facility
P.O. Box 45699
Lucasville, Ohio 45699

HTS/cmd
Filed November 25, 2009
To S.C. reporter December 29, 2009