Zimmerman, J.
 

 One engaged in ministering to the physical ills of mankind ought not to be victimized in a malpractice action by a designing patient with a fictitious grievance. On the other hand, a patient who is
 
 *139
 
 the victim of actionable negligence at the hands of a physician should be compensated for the results of such negligence.
 

 We are not confronted with the problem of whether a verdict and judgment for the plaintiff or defendant herein can be legally upheld, but are called upon to determine whether the trial court committed reversible error in arresting the evidence from the jury at the conclusion of plaintiff’s case in chief, and entering judgment for the defendant.
 

 Defendant is content to adopt the theory of the trial judge in rendering judgment for him, and most of his argument is directed toward sustaining that position. Much of plaintiff’s argument is in support of the proposition that under the evidence in the case, both negligence and proximate cause were issues of fact for the jury.
 

 There are several matters which are undisputed: (1) That the defendant, Dr. Cole, was and is a physician holding himself out as a specialist in dermatology; (2) that the relation of patient and physician existed between the plaintiff and the defendant; (3) that all those concerned, including the defendant, were initially of the opinion that the pinkish area on plaintiff’s forehead was a birthmark; (4) that the defendant applied a plaque containing radium to the plaintiff’s forehead for the purpose of eradicating the condition existing there, and that the anticipated result was not obtained, and (5) that radium is an agency possessing dangerous potentialities, capable of causing a burn to the human anatomy of serious consequences, when used thereon for too long a time on any one occasion, or at too frequent intervals.
 

 Approving the trial court’s position, defendant perforce concedes that, in interpreting plaintiff’s evidence most strongly in her favor, it was sufficient to warrant a finding of negligence, but maintains that such evi
 
 *140
 
 denee would not justify a finding that such negligence was the proximate cause of plaintiff’s impaired forehead.
 

 To sustain this point, defendant relies on the well-recognized rule that when the proof discloses that a given result may be due to two or more causes, for only one of which the defendant is liable, the matter enters the realm of guess and conjecture and should not be submitted to a jury; citing the following cases, among others:
 
 Loomis
 
 v.
 
 Toledo Rys. & Light Co.,
 
 107 Ohio St., 161, 140 N. E., 639;
 
 Cleveland Ry. Co.
 
 v.
 
 Sutherland,
 
 115 Ohio St., 262, 152 N. E., 726;
 
 Barker
 
 v.
 
 Heaney,
 
 (Texas Civ. App.), 82 S. W. (2d), 417; Dou
 
 mitt
 
 v.
 
 Diemer,
 
 144 Oregon 36, 23 P. (2d), 918;
 
 Matuschka
 
 v.
 
 Murphy,
 
 173 Wis., 484, 180 N. W., 821;
 
 Thompson
 
 v.
 
 Anderson,
 
 217 Iowa, 1186, 252 N. W., 117.
 

 But there is another rule, equally well established, to the effect that upon motion for a directed verdict or-for judgment, the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor, and if from the evidence reasonable minds may reasonably reach different conclusions upon any question of fact, such question of fact is for the jury.
 
 Hamden Lodge No. 517,
 
 I.
 
 O. O. F.,
 
 v.
 
 Ohio Fuel Gas Co.,
 
 127 Ohio St., 469, 189 N. E., 246.
 

 Which rule is controlling in- the present controversy? This question demands a more detailed outline of the evidence. Plaintiff’s evidence tended to show that in 1922, when she was four years of age, there developed on her forehead a pinkish area which was denoted by a physician as a birthmark. Thereupon, she was taken by her father and grandmother to the defendant, who was then of the opinion that a birthmark was involved and who represented, according to the testimony of the father and grandmother, that he could remove it successfully with radium. The father and grandmother testified positively that a space of
 
 *141
 
 but two weeks elapsed between tbe first aud second radium treatment, and that shortly after tbe second treatment tbe part of tbe forehead to wbicb tbe radium bad been applied assumed a burned or seared appearance, with a cracking and discoloration of tbe skin; tbe condition growing progressively worse and seriously affecting both tbe skin and tbe underlying bone structure in a manner plainly discernible.
 

 Mrs. Hubach, plaintiff’s mother, testified that she, in company with her husband and tbe plaintiff, went to see tbe defendant after tbe second treatment and “told him about the burned appearance and tbe peeling, and bow it bad been going on. And be sat there and examined her forehead, and finally be told us to put some salve on it.”
 

 Tbe defendant, called for cross-examination, admitted it would be “inadvisable” to give treatments of tbe kind to wbicb plaintiff bad been subjected oftener than three weeks apart, and asserted that in plaintiff’s case three months should have intervened between treatments.
 

 However, upon being questioned by bis own counsel, tbe defendant maintained that a period of three months did actually transpire between tbe first and second treatment, and that tbe' affliction concerning wbicb plaintiff complained was not due to a burn but to a disease known as scleroderma.
 

 Dr. LaBocco, who bad treated plaintiff for a keloid on her arm, and Dr. Cummer, who bad observed and photographed her, both dermatologists versed in tbe use of radium and X-ray for tbe treatment of skin ailments, took tbe stand as plaintiff’s witnesses. On cross-examination they testified their present opinion to be that plaintiff’s blemished forehead was tbe result of scleroderma and not of a burn. Thereafter, tbe trial court refused to allow counsel for plaintiff to in
 
 *142
 
 terrogate them concerning previous opinions to the contrary.
 

 Dr. White, plaintiff’s witness, testified the condition of plaintiff’s forehead was in his opinion due to a radium burn, “the second treatment being given too near the first treatment; there was evidently an accumulative condition in her case after the first treatment of radium, and the burn resulted.” He said further that he could discover no indications of scleroderma.
 

 At the instance of the trial judge, and by agreement of counsel, Dr. Karsner, professor of pathology in the medical school of Western Reserve University, became a witness. “In my opinion,” said Dr. Karsner, “that is not a radium burn, and is more like a scleroderma than any other disease I know.” Upon examination by counsel for plaintiff, Dr. Karsner admitted there was some evidence of radium burn, and that a previous written report in the matter, prepared by his assistant, contained a diagnosis of cutaneous cicatrix or skin scar
 

 Other evidence was introduced, hut for the purposes of this discussion we deem its inclusion unnecessary.
 

 In a malpractice action, the issue as to whether the defendant physician has proceeded in the treatment of the particular case with the requisite standard of care and skill is a matter which must ordinarily be determined from the testimony of medical experts. But the statements and acts of the defendant physician, as well as external appearances and manifest conditions which are observable by anyone, may he given by non-expert witnesses. And such testimony by lay witnesses may show a course of conduct with ensuing results of such a character as to warrant the inference of want of care. 31 Ohio Jurisprudence, 489, Section 247;
 
 Benson v. Dean,
 
 232 N. Y., 52, 56, 133 N. E., 125,
 
 126;
 
 
 *143
 

 DeGroot
 
 v.
 
 Winter,
 
 265 Mich., 274, 251 N. W., 425, 426;
 
 Stockham
 
 v.
 
 Hall,
 
 145 Kan., 291, 65 P. (2d), 348, 349.
 

 A motion for a directed verdict or for judgment by the defendant accepts as true every fact offered in evidence by the plaintiff with the reasonable inferences deducible therefrom. The rule of evidence in establishing the facts of negligence and proximate cause is the same as applied to the determination of any other questions of fact. And negligence and proximate cause become questions of law only when the evidence is such that reasonable minds cannot reasonably draw different conclusions either as to the facts or as to the deductions from the facts.
 

 Summarizing, the plaintiff herein offered proof that she went to the defendant for the removal of a blemish from her forehead, which was not then of an aggravated nature; that he attempted to accomplish the desired result with radium, a substance capable of inflicting a grave burn unless administered with care and caution; that he applied the radium twice, with an interval of two weeks elapsing between treatments (defendant himself admitting this would constitute bad practice); that shortly afterward the portion of the forehead treated took on a burned or seared appearance, developing worse and worse aspects and features with the passing of time. In addition, plaintiff produced the testimony of one medical doctor who stated a radium burn was in his opinion responsible for the condition complained of. "While other physicians expressed contrary opinions, that takes us into a field having to do with conflicting evidence, the weight of the evidence and the credibility of witnesses, which are matters peculiarly for the jury as the triers of the facts.
 

 Viewing plaintiff’s evidence in the light most favorable to her claim, she presented a chain of circumstances and events from which the ultimate facts of
 
 *144
 
 negligence and proximate cause could be reasonably inferred. Plaintiff having thus made a
 
 prima facie
 
 case, it was reversible error for the trial court to take the case from the jury and render judgment for the defendant, as was done.
 

 Lending support to this conclusion are the following cases:
 
 Gunning
 
 v.
 
 Cooley,
 
 281 U. S., 90, 74 L. Ed., 720, 50 S. Ct., 231;
 
 Hess
 
 v.
 
 Millsap
 
 (Tex. Civ. App.), 72 S. W. (2d), 923;
 
 Goddaire
 
 v.
 
 Sibley,
 
 270 Mass., 41, 46, 169 N. E., 797, 799;
 
 Hafemann
 
 v.
 
 Seymer,
 
 195 Wis., 625, 219 N. W., 375;
 
 Butler
 
 v.
 
 Rule,
 
 29 Ariz., 405, 242 P., 436, 33 Ariz., 460, 265 P., 757, 758.
 

 The minor question we are asked to decide is whether the trial judge erred or abused his discretion in declining to permit counsel for plaintiff to interrogate Drs. LaRocco and Cummer regarding the opinion held by them as to the cause of plaintiff’s affected forehead at a time prior to their advent as witnesses at the trial. Under the circumstances, and upon the printed record filed and relied upon by the plaintiff, containing only a partial transcript of the evidence, we cannot say such ruling was wrong. These doctors took the stand.as plaintiff’s witnesses, and the record suggests counsel for plaintiff had been advised by them before they were called that their ultimate opinion was unfavorable to plaintiff’s contention.
 

 The general rule seems to be that a medical expert should state the opinion he holds at the time he testifies, rather than the opinion held at some previous time. 22 Corpus Juris, 675, Section 764;
 
 Lyons
 
 v.
 
 Chicago City Ry. Co.,
 
 258 Ill., 75, 101 N. E., 211;
 
 McGovern
 
 v.
 
 Hays & Smith,
 
 75 Vt., 104, 53 A., 326. Compare,
 
 Runyan
 
 v.
 
 Price,
 
 15 Ohio St., 1, 13, 86 Am. Dec., 459. Or, as it is expressed in
 
 Perangelo’s Case,
 
 277 Mass., 59, 64, 177
 
 N.
 
 E., 892, 893, “The opinion of an expert which must be taken as his evidence is his final conclusion at the moment of testifying.”
 

 
 *145
 
 Here, we do not have a situation where Drs. LaBocco and Cummer took counsel by surprise; neither do we have a situation where they were called by the adverse party and were asked on cross-examination concerning previous opinions.
 

 One difficulty in this case which makes for confusion is that matters relating to the defense of the action were brought out during the cross-examination of some of the plaintiff’s witnesses who were favorably inclined toward the defendant’s position. Counsel for plaintiff charge this anomaly to improper rulings by the trial court. Be that as it may, we find it unnecessary to go into that angle of the controversy now.
 

 The judgments of the Court of Common Pleas and of the Court of Appeals are reversed, and the cause remanded to the former court for further proceedings in. accordance with law.
 

 Judgment reversed.
 

 Matthias, Williams, Myees and Gorman, JJ., concur.
 

 Weygandt, C. J., and Day, J., not participating.