DECISION AND JUDGMENT ENTRY
{¶ 1} Brian Lipp, Christie Lipp, and Jacob Lipp ("the Lipps") appeal the order of the Lucas County Court of Common Pleas granting summary judgment to Dr. Thomas Kwyer and The Toledo Clinic. Because we conclude that an expert witness was needed to establish a prima facie case on the Lipps' claim for medical malpractice, we affirm.
 {¶ 2} In January 1998, Brian Lipp ("Lipp") received a referral to see Dr. Thomas Kwyer for a persistent/recurring cervical lymphadenopathy ("neck mass"). Lipp saw Dr. Kwyer in February 1998, and at that visit, Dr. Kwyer noted there was a 1x1 cm mass, somewhat tender to touch, on the left side of Lipp's neck. It was decided that Lipp would undergo a deep cervical mass resection because of Lipp's discomfort with the neck mass. During the March 2, 1998 surgery, Dr. Kwyer removed a mass of thickened fascial tissue overlying the sternocleidomastoid muscle and some smaller masses also in the region.
 {¶ 3} Lipp alleges that after he returned home he felt a lump near the bottom of the bandage that he believed was his initial neck mass. He informed Dr. Kwyer at the post-operative visit a week later that the neck mass was still there. Dr. Kwyer identified a mass in Lipp's neck and discussed the possibility of a second surgery. During the visit, Dr. Kwyer allegedly stated, "We were on the wrong page that day" and that he would normally put a needle mark on the neck to create a white spot to locate the area to be operated. Lipp went to his family doctor in April and asked for a referral to a different surgeon. On May 1, 1998, Lipp saw Dr. Dodd who found a 1 cm node that was mildly tender and that "swings between the trapezius and sternocleidomastoid muscles 5.5 cm inferior to the prior incision." Lipp underwent a second surgery on May 27, 1999, in which a lymph node was removed.
 {¶ 4} In December 2000, the Lipps filed a complaint against Dr. Kwyer, The Toledo Clinic, St. Luke's Hospital, and Medical Mutual of Ohio alleging that Dr. Kwyer negligently performed an examination and surgery upon Brian Lipp. The claims against Dr. Kwyer and The Toledo Clinic asserted medical malpractice, breach of contract, battery, lack of informed consent, breach of warranty, and infliction of emotional distress. The Lipps alleged that St. Luke's Hospital was "negligent, reckless, wanton in granting hospital privileges to Dr. Kwyer, and/or in failing to discover that Dr. Kwyer was not suitable to retain hospital privileges, and/or in renewing his privileges when they should not have been renewed."
 {¶ 5} Dr. Kwyer, The Toledo Clinic, and St. Luke's Hospital moved for summary judgment on the basis that the Lipps failed to establish a prima facie case for medical malpractice by failing to offer an expert witness. In April 2002, the trial court granted Dr. Kwyer and The Toledo Clinic's motion for summary judgment on the basis that expert testimony was necessary to determine whether the standard of care was met in performance of the surgery.[1]
 {¶ 6} The Lipps raise the following three assignments of error:
 {¶ 7} "I. The trial court should have found that the lack of skill or care of the physician and surgeon here was so apparent as to be within the comprehension of laymen and required only common knowledge and experience to understand and judge it. Having made this determination, summary judgment should have been denied.
 {¶ 8} "II. The trial court should have found that a genuine issue of material fact did exist as to appellant's cause of action for battery and should have denied appellee Dr. Kwyer's motion for summary judgment.
 {¶ 9} "III. A genuine issue of material fact was presented as to appellant's cause of action for lack of informed consent and summary judgment should not have been granted."
 {¶ 10} A review of the trial court's granting of summary judgment is de novo, and thus, we apply the same standard as the trial court.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996),75 Ohio St.3d 280, 294. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 111.
 {¶ 11} In the first assignment of error, Lipp argues that Dr. Kwyer's negligence was so apparent that a layperson could comprehend it, and therefore, the trial court erred when it granted summary judgment to Dr. Kwyer and the Toledo Clinic because he did not need a medical expert to establish his claim for medical malpractice.
 {¶ 12} In order to establish medical malpractice, a plaintiff must show by a preponderance of the evidence that the injury complained of was the proximate result of a physician/surgeon's negligence. To prove that negligence, a plaintiff must show the existence of a standard of care within the medical community, breach of that standard of care by the defendant/physician, and proximate cause between the medical negligence and the injury sustained. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127,131-132. In Bruni, the Ohio Supreme Court stated that "[p]roof of malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff." Id. at 131. Whether the physician or surgeon has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the testimony of experts. Id. at 130. An exception to the rule requiring expert testimony exists when the physician's or surgeon's lack of skill or care is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience for an understanding of it. Id.
 {¶ 13} In the present case, Dr. Kwyer attached an affidavit to his and The Toledo Clinic's motion for summary judgment, in which he averred that he had complied with acceptable standards of care in rendering Lipp's medical care and treatment and that neither he nor The Toledo Clinic proximately caused any injury alleged through any action or inaction. Lipp opposed the motion by relying on his own affidavit and deposition and those of his wife. Lipp contends that because a lump was readily visible and palpable on his neck an expert witness is not needed to establish his claim that Dr. Kwyer failed to remove the lymph node. Lipp further argues that Dr. Kwyer admitted his malpractice when he stated "We were on the wrong page" and by noting that he normally puts a needle mark on the site to be able to detect it later.
 {¶ 14} Relatively few courts in Ohio have applied the common knowledge exception to obviate the need for expert witness testimony on the malpractice issue. Buerger v. Ohio Dept. of Rehab. Corr.
(1989), 64 Ohio App.3d 394, 399. In general, those cases deal with instances of gross inattention during patient care or miscommunication with the patient. See Jones v. Hawkes Hosp. of Mount Carmel (1964),175 Ohio St. 503 (delirious pregnant woman attempting to climb out of bed several times left unattended by nurse); Dimora v. Cleveland ClinicFound. (1996), 114 Ohio App.3d 711, 718 (patient left unattended in a walker while student nurse opened a door); Burks v. Christ Hosp. (1969),19 Ohio St.2d 128, 131 (sedated obese person falling from hospital bed);Hill v. Rambasek (December 20, 1979), Cuyahoga App. No. 39845 (partially restrained patient sitting up during eye surgery); Avondet v. Blankstein
(1997), 118 Ohio App.3d 357, 366 (doctor failed to inform patient that she needed to use alternative birth control month after receiving implant); Schraffenberger v. Persinger, Malik Haaf, M.D.s, Inc.
(1996), 114 Ohio App.3d 263, 267 (patient erroneously informed he was sterile following vasectomy).
 {¶ 15} Unlike the above cases, this case involves the standard of care of a physician performing a surgical procedure, specifically a cervical mass resection. A review of the evidence does not indicate that Dr. Kwyer's alleged malpractice is something within a layperson's general knowledge. Dr. Kwyer generally referred to the lump as a cervical mass and performed a cervical mass resection, while Dr. Dodd referred to the lump he identified as a lymph node and did a cervical lymph node biopsy. Because Dr. Kwyer did remove a mass from Lipp's neck, it is unclear from the evidence whether the lymph node removed by Dr. Dodd was the original mass or whether Dr. Kwyer should have discovered a lymph node while removing the other masses. Also, whether it was necessary to prick the spot with a needle mark or if failure to do so is malpractice is not something the average person would know. Lipp stated that when he first felt a lump under his bandage after the surgery he was unsure whether this lump was the original lump or whether it was the result of swelling from the surgery; without the aid of a medical expert, neither would a layperson. Dr. Kwyer's alleged failure to remove a lymph node later removed by Dr. Dodd is not an obvious case of malpractice such as leaving a medical instrument inside the body or operating on the right knee versus the left knee. Based on the above, we conclude that this is not a case where the alleged lack of skill or care is so apparent as to be within the comprehension of laymen.
 {¶ 16} The Lipps also contend that they did not need an expert witness because Dr. Kwyer admitted his malpractice. Lipp cites Hubach v.Cole (1938), 133 Ohio St. 137 for the proposition that a plaintiff can establish a prima facie case without independent medical testimony. InHubach, the defendant doctor stated that it would be "inadvisable" to give radium treatments less than three weeks apart. The doctor in Hubach, however, maintained that three months had transpired between treatments, while the plaintiff's father and grandmother testified that only two weeks lapsed between treatments. Under these circumstances, and because one medical doctor had opined that the plaintiff's burns were caused by radium, the Ohio Supreme Court found that it was reversible error for the trial court to have granted a directed verdict for the defendant doctor.
 {¶ 17} Here, Dr. Kwyer's alleged statements do not amount to an admission of malpractice because they do not establish either the standard of care or a breach of that standard. While we must presume that Dr. Kwyer made the statements as alleged by the Lipps,[2] his statement that "We were on the wrong page that day" is vague and does not equate to an admission of malpractice. In his affidavit, Dr. Kwyer averred, "I and The Toledo Clinic, Inc. complied with acceptable standards or [sic] care in rendering medical care and treatment to Plaintiff Brian Everett Lipp." He further stated, "No alleged injury sustained by Brian Everett Lipp was proximately caused by any action and/or failure to act on my part or the part of the Toledo Clinic, Inc." In order to show material issues of fact preventing summary judgment, the Lipps needed an expert to contradict Dr. Kwyer's statement that he complied with the standard of care.
 {¶ 18} Because we agree with the trial court that expert testimony was necessary to determine whether the standard of care was met in performing the initial surgical procedure, we conclude that the trial court did not err in granting summary judgment to Dr. Kwyer and The Toledo Clinic. As a result, Lipp's first assignment of error is overruled.
 {¶ 19} In his second and third assignments of error, Lipp argues that the trial court erred in granting summary judgment on the claims for battery and lack of informed consent. In both assignments of error, Lipp contends that his consent was ineffective because he was not informed of "certain material risks." He also argues that the scope of the consent was exceeded because he did not consent to a surgical operation on another part of his body and did not consent to the removal of muscle/tissue.
 {¶ 20} A plaintiff establishes the tort of lack of informed consent when:
 {¶ 21} "(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy; if any;
 {¶ 22} "(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
 {¶ 23} "(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, syllabus.
 {¶ 24} The doctrine of informed consent is based on the theory that every competent human being has a right to determine what shall be done with his or her own body. Siegel v. Mt. Sinai Hosp. (1978),62 Ohio App.2d 12. The law of informed consent has never required that the physician, prior to administering the treatment, fully inform the patient of all potential risks. Bedel v. Univ. of Cincinnati Hosp.
(1995), 107 Ohio App.3d 420, 427, citing O'Brien v. Angley (1980),63 Ohio St.2d 159. In determining whether a risk is material and must be disclosed, the reasonable patient standard is used: "a risk is material when a reasonable person, in what the physician knows or should know to be the patient's condition, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed treatment." Nickell, 17 Ohio St.3d at 139. Medical expert testimony is necessary to establish the significant risks which would have been disclosed to support the plaintiff's claim since the probability and magnitude of those risks is a matter of medical judgment beyond the knowledge of the lay person. See, Turner v. Cleveland ClinicFound., 8th Dist. No. 80949, 2002-Ohio-4790 at ¶ 25; Siuda v.Howard, 1st Dist. Nos. C-000656 and C-000687, 2002-Ohio-2292 at ¶ 106; Ratcliffe v. Univ. Hosp. of Cleveland (Mar. 11, 1993), Cuyahoga App. No. 61791.
 {¶ 25} To recover for a claim for battery, a plaintiff bears the burden of showing an intentional, unconsented-to touching. Anderson v.St. Francis-St. George Hosp., Inc. (1996), 77 Ohio St.3d 82, 84. In a medical setting, a physician who treats a patient without consent commits a battery, even though the procedure is harmless or beneficial. Lacey v.Laird (1956), 166 Ohio St. 12. Furthermore, the patient's consent must be informed consent. There is no legal defense to battery if the patient's consent is given without sufficient knowledge and understanding of the touching. Leach v. Shapiro (1984), 13 Ohio App.3d 393, 395. "Express consent to treat a specific condition through a surgical procedure may imply consent to all procedures necessary to achieve that end, but not to procedures clearly not contemplated within the original consent." Id. (Citations omitted.)
 {¶ 26} During his deposition, Lipp acknowledged that he signed, and that his wife witnessed, a consent form which explained the potential risks and complications of the procedure. The form also stated that there were no guarantees with regard to the results of the diagnosis and treatment he received. The consent form referenced in Lipp's deposition clearly states that the procedure was a "L[eft] deep cervical neck mass resection with biopsy." The undisputed facts indicate that Dr. Kwyer operated on the left side of Lipp's neck and removed one large mass and several smaller masses. Furthermore, Lipp has not supported his claim for lack of informed consent with expert testimony. The treatment actually received in this case is not so different from the treatment expected so as to relieve Lipp from the requirement of having expert testimony to establish his claim. Fernandez v. Ohio State Center for Pain Control
(Oct. 23, 2001), Franklin App. Nos. 01AP-330 and 01AP-331. Lipp's second and third assignments of error are not well taken, and thus, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal.
 JUDGMENT AFFIRMED.
[1] Although the trial court had stated that its order granting summary judgment was a final appealable order, St. Luke's Hospital was still a defendant in the action and there was no determination that there was no just reason for delay. We therefore remanded the case. The trial court has now entered summary judgment for St. Luke's Hospital, making the decision with regard to Dr. Kwyer and the Toledo Clinic a final appealable order.
[2] The Lipps contend that there are conflicts between Dr. Kwyer's statements, statements in the medical records, and the Lipps' testimony. These alleged conflicts are irrelevant in determining whether expert testimony is needed to establish a claim for medical malpractice, however.