ESTATE OF HALL, APPELLEE, *v.* AKRON GENERAL MEDICAL CENTER ET AL.;

PATTERSON ET AL., APPELLANTS.

[Cite as *Estate of Hall v. Akron Gen. Med. Ctr.*,

125 Ohio St.3d 300, 2010-Ohio-1041.]

*Plaintiff was not entitled to a jury instruction on doctrine of res ipsa loquitur in medical-malpractice case.*

(No. 2008-1980 — Submitted September 2, 2009 — Decided March 24, 2010.)

APPEAL from the Court of Appeals for Summit County,

No. 24066, 2008-Ohio-4332.

_____

**LUNDBERG STRATTON, J.**

**{¶ 1}** The issue before us is whether the plaintiff in this medical malpractice case was entitled to a jury instruction on the doctrine of res ipsa loquitur. The defendants-appellants argue that the plaintiff was not entitled to the instruction for two reasons: (1) the plaintiff presented testimony of expert witnesses who offered opinions on the specific act of negligence that they believe caused the injury and (2) evidence was presented on two equally efficient causes of the injury, one of which is not attributable to negligence.

**{¶ 2}** For the reasons that follow, we hold that the trial court properly declined to instruct the jury on the doctrine of res ipsa loquitur. Therefore, we reverse the judgment of the court of appeals and remand for further consideration of the assignments of error that the appellate court considered moot.

**{¶ 3}** Lurene N. Hall died on September 10, 2003, at Akron General Medical Center following a procedure performed by defendant-appellant Richard Patterson Jr., M.D., to place a dialysis catheter into her jugular vein. Prior to the procedure, Hall had a number of medical problems including high blood pressure

and chronic kidney disease. She began kidney dialysis in June 2003. Treatments were administered into her jugular vein through a dialysis catheter in the right side of her neck. Three months later, the catheter became infected and Hall was referred to Dr. Patterson, an interventional radiologist, who removed the catheter on September 8, 2003, without incident.[1]

{¶ 4} Two days later, on September 10, 2003, Patterson was scheduled to insert a new dialysis catheter. He chose to use the vein in the left side of her neck to avoid the infection that had been present in the vein on the right side. Using an ultrasound image to locate the vein, Patterson inserted a needle just above the collarbone. Patterson then inserted a microwire through the needle into the jugular vein toward the superior vena cava.[2] He monitored this procedure with a fluoroscope that produces real-time images of what is happening inside the patient.

{¶ 5} Patterson removed the needle, leaving the microwire in the vein. He fitted a coaxial introducer over the microwire and then removed the microwire. Next, Patterson slid a guidewire through the introducer, monitoring this process with a fluoroscope. Once the guidewire was in place, he successively inserted three dilators of increasingly larger size over the guidewire in order to increase the size of the puncture hole created by the needle. Patterson pushed each dilator through the skin, muscle, and vein until the hole was large enough for him to implant the catheter.

---

1. An interventional radiologist performs procedures on patients that involve inserting wires and other devices into the body while monitoring the device's movement through the body with the use of x-ray images.

2. The superior vena cava is a large vein that receives blood from the head, neck, arms, and thorax and delivers it to the right atrium of the heart. Stedman's Medical Dictionary (26th Ed.1995) 1926.

**{¶ 6}** Shortly after the procedure was concluded, Hall complained of pain at the incision site. Patterson prescribed medication and checked her condition 15 minutes later. She was lethargic, and her skin was cool and clammy. He checked her vital signs and instructed a nurse to call Hall's treating physician.

**{¶ 7}** Soon thereafter, Hall lost consciousness, and efforts to resuscitate her were unsuccessful. An autopsy revealed a laceration in the superior vena cava. As a result of the laceration, blood had leaked into the sac that surrounds the heart, which led to cardiac arrest, resulting in her death.

**{¶ 8}** The plaintiff-appellee, April E. Couch, administrator of the estate of Lurene N. Hall, filed this action on behalf of her mother's estate and next of kin. The complaint alleged that Patterson had negligently performed the dialysis-catheterization procedure, causing Hall's death.

**{¶ 9}** At trial, the plaintiff presented two expert witnesses who testified that Patterson's negligence proximately caused Hall's death. Dr. Michael Foley, an interventional radiology expert, testified that Patterson's actions fell below the standard of care as he inserted a very sharp dilator over a guidewire. According to Dr. Foley, Patterson most likely pulled the guidewire back somewhat as he advanced the dilator over it, exposing the dilator's sharp edge, which lacerated the superior vena cava. Foley testified that, in his opinion, Patterson failed to notice the laceration as he was inserting the dilators, something that should not occur with careful monitoring of the patient. Dr. Jeffrey Kremen, a vascular surgeon, also testified that the dilator veered off course during the procedure and caused the laceration.

**{¶ 10}** Two expert witnesses testified on behalf of Patterson. Dr. Matt Leavitt, an interventional nephrologist, testified that a laceration was a rare complication of this procedure. He testified that an abnormality or weakness in Hall's vessel may have made it susceptible to laceration and that in his opinion, the laceration was most likely caused by friction from an instrument rubbing

along the wall of the superior vena cava. He further testified that a physician can cause a tear while performing this procedure even if his performance complies with the standard of care and that such an injury is a known possible complication of the procedure.

{¶ 11} Dr. Mark Dean, an interventional radiologist, testified that Hall's blood vessels were likely weakened by the infection from the prior catheter or by her overall compromised medical condition and that the weak vessel was lacerated in the regular course of the procedure.

{¶ 12} At the close of all evidence, the plaintiff asked for a jury instruction on the doctrine of res ipsa loquitur. The court denied the request. The court stated that because there were multiple potential causative factors, it was "up to the trier of fact to determine which version they believe." The jury returned a defense verdict.

{¶ 13} The plaintiff moved for a new trial on the basis that the trial court erred as a matter of law when it refused to instruct the jury on the doctrine of res ipsa loquitur. The trial court denied the motion, and the plaintiff appealed.

{¶ 14} The Ninth District Court of Appeals reversed and remanded the case for a new trial. The court concluded that the plaintiff's evidence met the requirements for an instruction on the doctrine of res ipsa loquitur and that the lower court erred by refusing to so instruct the jury.

{¶ 15} The cause is before this court upon the acceptance of a discretionary appeal. 120 Ohio St.3d 1504, 2009-Ohio-361, 900 N.E.2d 622.

### Evolution of Res Ipsa Loquitur

{¶ 16} Res ipsa loquitur is an evidentiary rule that permits, but does not require, a jury to draw an inference of negligence from circumstantial evidence. *Fink v. New York Cent. RR. Co.* (1944), 144 Ohio St. 1, 28 O.O. 550, 56 N.E.2d 456, paragraph two of the syllabus. *Fink* examined the historical underpinnings of the rule of res ipsa loquitur, which originated by necessity when the true cause

of an occurrence was known by or could be determined by the defendant but not by the plaintiff. Id. at 5. *Fink* noted that the term first appeared in *Byrne v. Boadle* (Ex.1863), 2 H. & C. 722, 159 Eng.Rep.R. 299, a case in England in which a barrel of flour had rolled from a shop window and struck a passerby below. In that case, the plaintiff was unable to produce evidence to explain how or why the barrel had fallen. The court in *Byrne* determined that the falling barrel itself was sufficient evidence of negligence, or "res ipsa loquitur," which, literally translated, means "the thing speaks for itself."

**{¶ 17}** Seven years later, an English court applied the rule in a case where a brick had fallen upon the plaintiff from the wall of a bridge that was exclusively controlled by the defendant. *Fink* at 5-6, citing *Kearney v. London B. & S. C. Ry. Co.*, L. R. (1870), 5 Q.B. 411. The use of the phrase spread through England and into the United States. The rule allows a common sense appraisal of the circumstances surrounding an unusual accident, permitting a jury to draw the obvious conclusion that the accident was the defendant's fault and requiring the defendant to explain why the accident was not his fault. Wampler, Fly in the Buttermilk: Tennessee's Desire to Dispense with Layperson Common Sense and the Medical Malpractice Locality Rule (2002), 69 Tenn.L.Rev. 385, 391.

**{¶ 18}** The term was first mentioned in an Ohio Supreme Court opinion in *Cincinnati Traction Co. v. Holzenkamp* (1906), 74 Ohio St. 379, 78 N.E.529, a case in which a trolley pole fell on a person who was about to step onto the car. The court held that the trial court "was warranted in taking judicial notice of the fact" that a trolley pole does not break and fall in the ordinary course of events unless there was negligence in the construction or management of it and therefore the court had properly charged the jury on the maxim of res ipsa loquitur. Id. at 389.

**{¶ 19}** In *Soltz v. Colony Recreation Ctr.* (1949), 151 Ohio St. 503, 39 O.O. 322, 87 N.E.2d 167, this court reviewed some of its past decisions that

applied the rule of res ipsa loquitur. The rule was applied most often in cases involving falling objects, passenger common carriers, or other situations that presented a dangerous threat of serious injury or death. Id. at 508; *Worland v. Rothstein* (1943), 141 Ohio St. 501, 26 O.O. 80, 49 N.E.2d 165 (window cleaner dropping a wet sponge); *Walters v. Baltimore & Ohio Southwestern Ry. Co.* (1924), 111 Ohio St. 575, 146 N.E.75 (high-voltage electric wires fell on a highway). See also *Scrabic v. Cincinnati, New Orleans & Texas Pacific Ry. Co.* (1932), 42 Ohio App. 473, 182 N.E. 528 (train derailment); *Baltimore & Ohio Ry. Co. v. Norcross Marble Co.* (Cuyahoga App.1923), 2 Ohio Law Abs. 104, 1923 WL 2391, (train derailment).

{¶ 20} In *Loomis v. Toledo Rys. & Light Co.* (1923), 107 Ohio St. 161, 140 N.E. 639, this court held that res ipsa loquitur did not apply, because the defendant had produced evidence that the accident was the result of natural causes. In *Loomis*, electric poles and wires fell onto the plaintiff's automobile at an intersection. The plaintiff alleged that the defendant had negligently maintained the poles; however, the defendant presented evidence that the poles fell during an unusually strong wind storm. *Loomis* held that res ipsa loquitur did not apply under these circumstances and that the jury was properly instructed to consider both asserted possible causes of the occurrence. Id. at 172-173.

{¶ 21} Historically, res ipsa loquitur was not applied in medical malpractice cases, which require a plaintiff to demonstrate by a preponderance of the evidence that the injury was the direct and proximate result of the physician's failure to use ordinary skill, care, or diligence. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, at paragraph one of the syllabus. Generally, to make that demonstration, a plaintiff must introduce evidence of the applicable standard of the medical community and evidence that the physician negligently departed from that standard. Id. Malpractice cases often require background information on medical treatment and possible causes of injury not

6

known to the average juror. Thus, res ipsa loquitur is usually not applicable in medical malpractice cases because a layperson cannot determine by common knowledge whether negligence occurred.

{¶ 22} In addition, courts recognize that there may be a variety of causes for an injury in a medical malpractice case, and some procedures are so inherently risky that injuries may occur even when physicians are careful. "A physician is not a warrantor of cures. If the maxim, 'Res ipsa loquitur,' were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' " *Ewing v. Goode* (Cir.Ct., S.D.Ohio 1897), 78 F. 442, 443. Thus, a jury in a medical malpractice action would rarely be able to conclude, based on common experience alone, that the injury was one that did not ordinarily occur in the absence of negligence.

{¶ 23} Nevertheless, courts gradually began to allow plaintiffs to use the doctrine of res ipsa loquitur in medical malpractice cases. Initially, it was used only in the cases where expert medical testimony was not necessary because the negligence was so obvious that jurors could determine from their own knowledge and common sense that the physician had been negligent — for example, when a physician failed to remove a sponge or other foreign object from the patient's body during surgery. See, e.g., *Ault v. Hall* (1928), 119 Ohio St. 422, 164 N.E. 518 (failure to remove surgical sponges before the incision was closed); *Bradshaw v. Wilson* (1950), 87 Ohio App. 319, 43 O.O. 47, 94 N.E.2d 706 (bone fragment left in fracture site). But courts would not apply the rule if a specific act of negligence was alleged. *Sieling v. Mahrer* (8th Dist.1953), 113 N.E.2d 373.

{¶ 24} Later, courts expanded the use of res ipsa loquitur to cases in which a plaintiff alleged and presented evidence to prove a specific act of

negligence. See *Oberlin v. Friedman* (1965), 5 Ohio St.2d 1, 34 O.O.2d 1, 213 N.E.2d 168, paragraph two of the syllabus ("If the allegations of the petition and the proof in support thereof call for its application, the doctrine of *res ipsa loquitur* may be applied even though the petition also alleges and evidence is offered to prove specific acts of negligence"); *Morgan v. Children's Hosp.* (1985), 18 Ohio St.3d 185, 189, 18 OBR 253, 480 N.E.2d 464 (the use of expert testimony to establish possible specific acts of negligence does not preclude an instruction of res ipsa loquitur if otherwise justified by the circumstantial evidence adduced at trial). However, a plaintiff may not use the doctrine if its applicability is "based solely upon the fact that the treatment was unsuccessful or terminated with poor or unfortunate results. *Oberlin*, paragraph three of the syllabus.

## Application of Res Ipsa Loquitur

{¶ 25} In this case, the court of appeals concluded that the plaintiff was entitled to a jury instruction on res ipsa loquitur, having produced sufficient evidence to show that in the ordinary course of events, this type of injury does not occur without negligence. 2008-Ohio-4332, ¶ 30, 31. The appellate court discounted the defense experts' opinions of alternative, nonnegligent causes, holding that such testimony has no effect on a court's determination whether to give an instruction on res ipsa loquitur. Id. at ¶ 30.

{¶ 26} A court must determine on a case-by-case basis whether the doctrine of res ipsa loquitur applies. *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 171, 17 O.O.3d 102, 406 N.E.2d 1385. We review de novo whether the evidence supported a jury instruction on the doctrine of res ipsa loquitur.

{¶ 27} A plaintiff must establish two elements for the doctrine of res ipsa loquitur to apply: "(1) [t]hat the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the

injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Hake v. George Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66-67, 52 O.O.2d 366, 262 N.E.2d 703; *Fink*, 144 Ohio St. 1, 28 O.O. 550, 56 N.E.2d 456.

{¶ 28} The parties do not dispute the first requirement, that Patterson was in control of the instruments inserted into the decedent's body. The defendants-appellants, Patterson and his employer, Radiology & Imaging Services, Inc., contend that the plaintiff failed to establish the second requirement. First, they contend that because the plaintiff presented "direct evidence" of specific acts of negligence from two medical expert witnesses, res ipsa loquitur, which permits jurors to draw an inference of negligence from circumstantial evidence, did not apply. Second, the defendants contend that defense experts testified that the laceration could have occurred in the absence of negligence and that res ipsa loquitur does not apply when the record contains evidence of two equally efficient causes of the injury, one of which is not attributed to negligence.

{¶ 29} In this case, there was no direct evidence of negligence, i.e., evidence based upon personal knowledge or observation. The plaintiff's evidence to establish medical malpractice consisted of opinions of expert medical witnesses on the appropriate standard of care and the specific cause of Hall's injury: that Patterson negligently withdrew the guidewire, allowing a sharp dilator to lacerate the superior vena cava. We have held that a plaintiff's introducing expert testimony regarding possible specific acts of negligence does not preclude an instruction on res ipsa loquitur "if otherwise justified by the circumstantial evidence adduced at trial." *Morgan v. Children's Hosp.*, 18 Ohio St.3d at 189, 18 OBR 253, 480 N.E.2d 464. Consequently, the fact that the plaintiff presented evidence from expert witnesses on what they believed specifically caused Hall's

injury does not prevent the plaintiff from also relying on the rule of res ipsa loquitur if otherwise justified by circumstantial evidence.

{¶ 30} In this case, the plaintiff relied solely upon her expert witnesses to establish the second requirement of res ipsa loquitur. In addition to testifying about a specific negligent act, both witnesses testified that a laceration of the superior vena cava would not occur in the ordinary course of this procedure without negligence. The use of expert testimony in a medical malpractice case to establish that an injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed does not disqualify such a case for application of the doctrine of res ipsa loquitur. *Morgan v. Children's Hosp.* at syllabus. However, defense expert witnesses testified that there could be nonnegligent causes of the injury. They testified that a tear in a blood vessel is a known complication of this procedure, and the poor condition of Hall's blood vessels may have made them susceptible to a laceration. They also testified that the injury may have occurred even if Patterson's actions complied with the standard of care. Thus, the defendants argue, the record contains evidence of two equally efficient causes of the injury, so res ipsa does not apply, citing *Jennings Buick, Inc. v. Cincinnati*, 63 Ohio St.2d 167, 17 O.O.3d 102, 406 N.E.2d 1385.

{¶ 31} In *Jennings Buick*, the plaintiff's expert witness attributed a water-main break to the city's negligence while the defense theory attributed the break to natural causes. This court concluded that both were equally probable causes and thus the trial court did not err in refusing to give the instruction on res ipsa loquitur. *Jennings Buick* held that "[w]here it has been shown by the evidence adduced that there are two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant, the rule of res ipsa loquitur does not apply."

**{¶ 32}** The court of appeals attempted to distinguish this case from *Jennings Buick,* reasoning that the plaintiff's expert in *Jennings* agreed that the defense theory was equally probable, whereas, in this case, the plaintiff's experts testified that the injury was more likely caused by negligence and rejected the defense theories.

**{¶ 33}** The appellate court's interpretation of *Jennings Buick* is mistaken. In that case, the court stated that "the evidence tended to show that there were equally probable causes of the break which were not attributable to the negligence of the city." Id., 63 Ohio St.2d at 173, 17 O.O.3d 102, 406 N.E.2d 1385. "[T]here was evidence presented to the trier of the facts which would have allowed the jury to find that one or another potential cause of the injury not attributable to the negligence of the city was equally as probable as was a cause attributable to the negligence of the city." Id. at 174. Thus, because there were opposing opinions on causation — at least one of which was not attributable to negligence — the rule of res ipsa loquitur did not apply.

**{¶ 34}** We hold that the reasoning of *Jennings Buick* applies here. This case involved a complicated medical procedure, and the expert witnesses presented opposing opinions regarding the cause of Hall's injury, one not attributable to negligence. The experts agreed that perforation of a blood vessel is a known risk and complication of this procedure even when performed in compliance with the standard of care. Thus, it is not a clear case of negligence. Instead, the trial court was presented with equally probable causes of the injury, which meant that the cause of the injury was a question for the jury to determine. Although the plaintiff discounted the defense theory as a "far-fetched alternative," the plaintiff acknowledges that the credibility of the witnesses is a question for the jury to assess. Thus, under the circumstances of this case, the trial court properly refused to instruct the jury on res ipsa loquitur.

**{¶ 35}** This holding is consistent with the doctrine of res ipsa loquitur, which was "founded upon an absence of specific proof concerning acts or omissions which would constitute negligence." *Morgan v. Children's Hosp.*, 18 Ohio St.3d at 192, 480 N.E.2d 464 (Holmes, J., dissenting). Under the evidence presented in this case, there are two equally efficient and probable causes of the injury; thus, it would have been improper to instruct the jury that it could infer negligence. Based on the evidence produced, this is not a situation where it can be said that "the thing speaks for itself." Rather, this case represents the classic battle between expert witnesses. As the court of appeals stated, "The trier of fact must weigh the evidence and decide which experts to believe." 2008-Ohio-4332, ¶ 30. Consequently, the trial court properly declined to instruct the jury on the doctrine of res ipsa loquitur.

## Conclusion

**{¶ 36}** For the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause for consideration of the assignments of error that were considered moot.

Judgment reversed.

O'CONNOR and O'DONNELL, JJ., concur.

LANZINGER, J., concurs in judgment only.

MOYER, C.J., and PFEIFER and CUPP, JJ., dissent.

_____

**LANZINGER, J., concurring in judgment only.**

**{¶ 37}** Although I concur in the judgment in this case, I would also overrule *Morgan v. Children's Hosp.* (1985), 18 Ohio St.3d 185, 18 OBR 253, 480 N.E.2d 464, as an unwarranted expansion of the scope of res ipsa loquitur to permit a jury to infer that negligence caused an injury during a complicated

medical procedure, even when expert testimony is necessary to explain the procedure and the injury.[3]

**{¶ 38}** The two prerequisites that a plaintiff must show to allow a jury instruction on res ipsa loquitur to be given are "(1) [t]hat the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Hake v. George Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66-67, 52 O.O.2d 366, 262 N.E.2d 703.

**{¶ 39}** But because injuries in medical-malpractice cases may result from many reasons other than the physician's negligence, application of res ipsa loquitur in such cases is limited. Many medical procedures are inherently risky, so injuries may occur even when physicians' actions meet the standard of care. Finally, most medical procedures are beyond the common understanding of lay jurors, requiring an expert to explain them. See *Hubach v. Cole* (1938), 133 Ohio St. 137, 142, 10 O.O. 187, 12 N.E.2d 283. The need for an expert is contrary to the fundamental premise behind the doctrine of res ipsa loquitur. See Prosser & Keeton on Torts (5th Ed.1984) 243, Section 39.

**{¶ 40}** I believe that the reasoning of the dissent in *Morgan* also applies in this case:

**{¶ 41}** "The doctrine is founded upon an absence of specific proof concerning acts or omissions which would constitute negligence. It also has been stated that the doctrine can only be applied when the 'thing speaks for itself.'

---

3. Unlike Justice Cupp, I do not believe that this court must wait for an invitation to overrule a case before we can do so. I would also not wait for the parties to do an analysis pursuant to *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, before overturning precedent that was wrongly decided. See, e.g., *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 219-224 (Lanzinger, J., concurring in part).

Here, as noted, there was evidence adduced by the plaintiff relating to the defendant's negligence. Also, [the plaintiff's] injury cannot be deemed to speak for itself where complex technical and medical testimony was required to explain the result, and which evidence produced conflicting opinions as to the more probable cause of the injury.

{¶ 42} "It became a jury question to choose the more probable cause of the injury and, after considering all of such evidence, the jury did just that * * *." *Morgan*, 18 Ohio St.3d at 192, 18 OBR 253, 480 N.E.2d 464 (Holmes, J., dissenting).

{¶ 43} Hall's injury and eventual death occurred during a complicated medical procedure, and expert witnesses presented opposing opinions regarding whether her injury could have occurred if ordinary care had been observed. Although the plaintiff discounts the defense theory as a "far-fetched alternative," the defense experts characterized plaintiff's experts' explanation as "unlikely as can be." This case represents a classic battle between expert witnesses, making a jury instruction on res ipsa loquitur inappropriate. Our holding, rather than usurping the jury's role, relies on the jury as the trier of fact to "weigh the evidence and decide which experts to believe." *Estate of Hall v. Akron Gen. Med. Ctr.*, Ninth Dist. No. 24066, 2008-Ohio-4332, ¶ 30.

{¶ 44} "Where it has been shown by the evidence adduced that there are two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant, the rule of res ipsa loquitur does not apply. In other words, where the trier of the facts could not reasonably find one of the probable causes more likely than the other, the instruction on the inference of negligence may not be given." *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 171-172, 17 O.O.3d 102, 406 N.E.2d 1385, citing *Huggins v. John Morrell & Co.* (1964), 176 Ohio St. 171, 27 O.O.2d 50, 198 N.E.2d 448; *Schafer v. Wells* (1961), 171 Ohio St. 506, 14 O.O.2d 439, 172

14

N.E.2d 708; *Krupar v. Procter & Gamble Co.* (1954), 160 Ohio St. 489, 52 O.O. 363, 117 N.E.2d 7; *Soltz v. Colony Recreation Ctr.* (1949), 151 Ohio St. 503, 39 O.O. 322, 87 N.E.2d 167; *Glowacki v. N. W. Ohio Ry. & Power Co.* (1927), 116 Ohio St. 451, 157 N.E. 21.

{¶ 45} Under the circumstances of this case, the trial court properly refused to instruct the jury on res ipsa loquitur. I concur in judgment only.

_____

**MOYER, C.J., dissenting.**

{¶ 46} Because the majority refuses to apply our precedent that directly resolves the issue before us, I respectfully dissent. This court has held that "[i]t is a well-established principle that a court may not refuse as a matter of law to instruct on the doctrine of *res ipsa loquitur* merely upon the basis that the defendant's evidence sufficiently rebuts the making of such an inference." *Morgan v. Children's Hosp.* (1985), 18 Ohio St.3d 185, 189, 18 OBR 253, 480 N.E.2d 464. Application of that well-established principle to the facts presented would compel us to find that the jury in this case should have been instructed on the doctrine of res ipsa loquitur.

{¶ 47} The plaintiff in *Morgan* entered a comatose state following complications from surgery to remove his thymus gland. Id. at 186. A medical-malpractice action was brought against the anesthesiologist on his behalf. Id. The plaintiff's expert testified that the plaintiff's oxygen deprivation resulted from the defendant's agent, a nurse, failing to adequately ventilate the plaintiff. Id. The defendant's expert concluded that the oxygen deprivation was caused by bubbles of air blocking the blood vessels. Id. The trial court refused the plaintiff's request to instruct the jury on res ipsa loquitur, and the jury returned a verdict for the defendant. Id. at 186-187.

{¶ 48} We held on appeal that the instruction was warranted despite the competing expert theories on causation. Id. at 190. Relying on precedent from

1944, we underscored the role of the jury as the finder of fact. Id. It would be "an invasion of the province of the jury" for the trial court to declare as a matter of law that the jury is not permitted to draw a reasonable inference of negligence because the defendant has offered his own competing explanation. Id.

{¶ 49} Ignoring the import of *Morgan*, the majority instead relies on *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 171, 17 O.O.3d 102, 406 N.E.2d 1385, and its holding: "Where it has been shown by the evidence adduced that there are two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant, the rule of *res ipsa loquitur* does not apply." The majority, however, overlooks the very next sentence in *Jennings Buick*, which clarifies that "where the trier of facts could not *reasonably* find one of the probable causes more likely than the other, the instruction on the inference of negligence may not be given." (Emphasis added.) Id. It is therefore only when the jury has no basis upon which to favor the plaintiff's explanation over the defendant's that the res ipsa loquitur instruction is impermissible. As the majority observes, determining the credibility of witnesses is left to the jury, and such determinations could be a basis for favoring a plaintiff's theory. As the court of appeals here properly noted, the plaintiff's own expert in *Jennings Buick* admitted that it was equally likely that the damage to the plaintiff's property resulted from a cause other than the defendant's negligence. *Estate of Hall v. Akron Gen. Med. Ctr.*, Summit App. No. 24066, 2008-Ohio-4332, ¶ 23. The jury could not, thus, reasonably infer that the damage would not have occurred absent the defendant's negligence.

{¶ 50} The new rule adopted by the majority runs a substantial risk of largely foreclosing the use of res ipsa loquitur in medical-malpractice cases. The defendant must now only present a realistic alternative explanation for the cause of injury, which seems very likely given the abundant availability of experts in medical-malpractice cases, and the plaintiff will be deprived of the benefit of the

long-standing negligence doctrine. The majority may envision the trial judge making a probability determination for each theory presented, but that is exactly the usurpation of the jury's role that this court sought to avoid in *Morgan*.

{¶ 51} Until today, there was no indication that *Morgan* did not remain viable precedent. The majority overrules it without saying so. Because *Morgan* authorizes the jury, as the ultimate finder of fact, to determine the likely cause of injury, I would affirm the judgment of the court of appeals and hold that the trial court should have instructed the jury on the doctrine of res ipsa loquitur. I note that such an instruction does not permit a jury to infer negligence if it merely decides that the plaintiff's causation theory is more likely than the defendant's. Instead, res ipsa loquitur can be used to find liability only if " 'the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.' " *Morgan*, 18 Ohio St.3d at 188, 18 OBR 253, 480 N.E.2d 464, quoting *Hake v. George Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66-67, 52 O.O.2d 366, 262 N.E.2d 703. That requirement must be included in any jury instruction given on the doctrine.

PFEIFER, J., concurs in the foregoing opinion.

_____

**CUPP, J., dissenting.**

{¶ 52} I agree with Chief Justice Moyer's dissent in that both the issue in this case and the factual context in which it arises are virtually indistinguishable from those in *Morgan v. Children's Hosp.* (1985), 18 Ohio St.3d 185, 18 OBR 253, 480 N.E.2d 464, and that as a consequence, our decision should be controlled by *Morgan*.

{¶ 53} In both cases, an injured patient (or injured patient's estate) brought a medical-malpractice action against the treating physician. In both cases, the patient and the physician each presented expert testimony as to the cause of the patient's injuries, and in each case the opinion testimony of the

patient's experts and the physician's experts directly conflicted. In each case, the trial court denied the patient's request to instruct the jury on res ipsa loquitur. Both trial courts reasoned that the res ipsa loquitur inference was inapplicable because there were competing expert opinions as to the cause of the injury.

{¶ 54} In *Morgan,* this court held that the trial court erred in denying the requested res ipsa loquitur instruction and remanded the case for a new trial. In light of the close similarity of the present case to *Morgan*, our decision in the present case should be governed by our decision in *Morgan* under the principle of stare decisis. This would result in the affirmance of the court of appeals' judgment reversing the trial court for failure to instruct the jury on the doctrine of res ipsa loquitur.

{¶ 55} I am not convinced, however, that *Morgan* was correctly decided. I have reservations about the application of the res ipsa loquitur doctrine in medical-malpractice cases when conflicting expert testimony is the basis on which the issue must be decided. The use of res ipsa loquitur in such circumstances seems to extend the doctrine beyond the scope of its justification.

{¶ 56} As a general rule, medical-malpractice cases require expert testimony because the determination whether a physician's treatment of a patient fell within the appropriate standard of care is beyond the jury's common knowledge and experience. *Hubach v. Cole* (1938), 133 Ohio St. 137, 142, 10 O.O. 187, 12 N.E.2d 283. Res ipsa loquitur, however, is an evidentiary rule that "permits, but does not require, the jury to draw an inference of negligence when the logical premises for the inference are demonstrated." *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 169, 17 O.O.3d 102, 406 N.E.2d 1385. In other words, a res ipsa loquitur case is a type of circumstantial-evidence case. Id. at 170. See also Restatement of the Law 2d, Torts (1965), Section 328D, Comment b. The doctrine applies when the injury complained of would not have occurred in the absence of negligence. Id. at Comment c. A key factor in the

application of res ipsa loquitur is that a sufficient base of knowledge exists with the jury to justify allowing the inference. Prosser & Keeton on Torts (5th Ed. 1984) 243, Section 39 (the inference is "based upon the evidence given, together with a sufficient background of human experience to justify the conclusion"); Restatement of the Law 2d, Torts, Section 328D, Comment d. Since the inference permitted by the res ipsa loquitur doctrine is drawn from applying common knowledge and experience to the facts, res ipsa loquitur seems incompatible with situations in which expert assistance is required to determine the standard of care. See, e.g., *Orkin v. Holy Cross Hosp. of Silver Spring, Inc.* (1990), 318 Md. 429, 433, 569 A.2d 207.

{¶ 57} As noted in the majority opinion, res ipsa loquitur originally was not applied in medical-malpractice cases, because many medical procedures are so inherently risky that injuries can occur even when no physician has been negligent. Prosser & Keeton on Torts, 243, Section 39. In this regard, Ohio has long recognized that the doctrine of res ipsa loquitur is inapplicable in medical-malpractice actions when the claim is based solely on unsuccessful treatment or unfortunate results. *Oberlin v. Friedman* (1965), 5 Ohio St.2d 1, 8, 34 O.O.2d 1, 213 N.E.2d 168.

{¶ 58} Still, res ipsa loquitur has been used in medical-malpractice cases. The doctrine was first applied to medical-malpractice actions when "the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, and in such case expert testimony is not necessary." *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 130, 75 O.O.2d 184, 346 N.E.2d 673. The classic example of such a circumstance is when a foreign object is left in the body of a patient after surgery. *Oberlin*, 5 Ohio St.2d at 9, 34 O.O.2d 1, 213 N.E.2d 168. See also *Ault v. Hall* (1928), 119 Ohio St. 422, 164 N.E. 518, paragraph eight of the syllabus. In such a case, it is within a juror's common

knowledge and experience that the injury was one that would not ordinarily occur without negligence.

{¶ 59} The res ipsa loquitur doctrine, however, has been extended to cases like the one before us in which opinion testimony of medical experts provides the only basis for a jury's determination whether the injury was one that would ordinarily not occur in the absence of negligence. Thus, instead of relying on common knowledge and experience to draw an inference from the facts, the jury is relying on expert testimony. Under these circumstances can it any longer be said that the physician's lack of care is so apparent that it is obvious from the jury's common knowledge and experience? The common-knowledge component of res ipsa loquitur should mean that an injury's cause must be discernable without expert testimony, as, for example, in the cases where a foreign object is left in the patient's body after surgery. Thus, applying the res ipsa loquitur doctrine in circumstances in which conflicting medical-expert testimony is needed to determine whether negligence was involved and, more particularly, that the injury is one which would not occur in the absence of negligence appears to be extending the doctrine beyond the purpose and rationale that justify its use.

{¶ 60} In this case, however, we have not been asked to overrule *Morgan.* Nor has any analysis or argument been offered in the briefs or at oral argument that might meet the test adopted in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, to demonstrate a justified break with existing precedent. Thus, despite my reservations with the continued use of the res ipsa loquitur doctrine in cases where jurors must rely on conflicting medical-expert testimony to determine whether negligence caused the injury, I am constrained here to adhere to this court's established precedent in the absence of briefing and argument on the justification for abandoning that precedent.

{¶ 61} I, therefore, dissent.

MOYER, C.J., concurs in the foregoing opinion.

_____

Paul W. Flowers Co., L.P.A., and Paul W. Flowers; Stan B. Schneiderman; and Gary T. Mantkowski, for appellee.

Roetzel & Andress, L.P.A., Douglas G. Leak, and Stacy Ragon, for appellants.

_____